FREDERICKA HOMBERG WICKER, Judge.
|2The plaintiff/appellant appeals the trial court’s granting of the defendants’ per *709 emptory exception of prescription and the dismissal of all but $2,390.00 of her unpaid wage claim. For the reasons that follow, the judgments appealed from are affirmed.
Factual and Procedural Background
The plaintiff/appellant, Ms. Maxine Webster, provided home health care services to the defendant/appellee, Nash Roberts and his wife, Lydia Roberts, commencing in 1999 until August 25, 2005.[1] Penn Treaty Network America Insurance Company (Penn Treaty) paid for the services Ms. Webster and her staff rendered. It is alleged that on March 26, 2004, Penn Treaty required Ms. Webster and her staff to complete daily logs detailing the dates, hours, hourly rate, and total charges for services rendered. Ms. Webster contends that she complied with this requirement and submitted the daily logs to Nash Roberts who, in turn, was responsible for remitting the logs to Penn Treaty. Despite Ms. Webster’s |ssubmission of the daily logs to Nash Roberts, Ms. Webster and her staff were not paid for the services rendered. Therefore, Ms. Webster and Nash Roberts executed a letter dated June 15, 2004, which stated, in pertinent part:
Eighteen months lapsed and Mr. Nash C. Roberts stated that he lacked the liquid resources to satisfy this agreement. This letter is to serve as verification by Mr. Nash C. Roberts, Jr. that all financial obligations will be paid with interest set at 15% either directly by Mr. Nash C. Roberts, Jr. or by his estate. Penn Treaty Network Insurance Agency had continued to pay for eight hours for the care of Mrs. Lydia Roberts and six hours for the care of Mr. Nash C. Roberts, Jr. until September of 2003 when payments ceased.
Ms. Webster continued to render services after the execution of this letter without payment. She, therefore, filed a Petition for Damages against Penn Treaty, American Network Insurance Company (American Network), and Nash Roberts on August 22, 2008. In her petition, Ms. Webster alleged that Penn Treaty and Nash Roberts were solidarily indebted to her for unpaid wages in the amount of $126,476.14 — wages for the period ranging from January 2003 through August 2005. Penn Treaty and American Network excepted to the petition on July 30, 2009, on the grounds of prescription and no cause of action, respectively. They also asserted a cross-claim against Nash Roberts. Nash Roberts answered the petition on January 23, 2009, arguing that Ms. Webster’s claim had prescribed pursuant to La. C.C. art. 3494. The trial court heard Nash Roberts’ exception on October 28, 2009 and issued an order granting partial relief on December 2, 2009.[2] The judgment stated:
IT IS ORDERED, ADJUDGED AND DECREED that defendant Nash Roberts’s [sic] exception of prescription be and the same is hereby SUSTAINED IN PART and OVERRULED IN PART with each party to bear its own costs. The court dismisses plaintiffs claims for unpaid compensation against defendant Nash Roberts, with prejudice, except for her claim for $2,390.00.
|4Ms. Webster moved for a devolutive appeal on January 27, 2010, and the appeal
*710 was lodged with this Court on May 20, 2010. We determined, however, that the December 2nd judgment was not final and dismissed the appeal. See Webster v. Penn Treaty Network Am. Ins. Co., 10-411 (La.App. 5 Cir. 9/28/10), 49 So.3d 442.
Sometime thereafter, Nash Roberts died and his testamentary co-executors, Kenneth Roberts and Nash Roberts III (collectively “the Roberts”) were substituted as party-defendants on February 25, 2011. On June 28, 2011, Penn Treaty and American Network moved to reset their previously filed exceptions of prescription and no cause of action for hearing.[3] The Roberts amended their answer on August 5, 2011, setting forth the affirmative defenses of set-off, alleging that Ms. Webster was indebted to Nash Roberts for two unpaid loans in the amounts of $5,000 and $2,000 made on January 9, 2002 and March 30, 2005, respectively. Ms. Webster subsequently filed an amended petition on August 24, 2011, alleging that she submitted her final invoice for services in August of 2005 and that she had not received payment for the period of August 22, 2005 through August 25, 2005, totaling $2,390.00.
The trial court heard Penn Treaty’s exception of prescription and American Network’s exception of no cause of action on August 30, 2011. The court rendered its judgment on October 15, 2011, which granted American Network’s exception of no cause of action. In regards to Penn Treaty, the court sustained the peremptory exception in part and overruled it in part, dismissing Ms. Webster’s claims for unpaid wages, except for her claim for $2,390.00. Finally, the court determined that there was no just reason for delay and designated its judgment, as well as its December 2, 2009 judgment, as final judgments.
| ^Assignments of Error
Ms. Webster appeals, assigning the following errors:
1. the trial court erred when it concluded the June 15, 2004 employment contract was insufficient to suspend or interrupt prescription until the date of termination of the employment contract;
2. the trial court erred when it sustained the defendant’s exception of prescription and dismissed her claim for compensation, awarding her only $2,390.00 because she is entitled to recover penalty wages pursuant to La. R.S. 23:631 and all wages that were owed and acknowledged from January 2003 to the date of termination of the employment relationship; and
3. the trial court erred in failing to award attorney’s fees for having to institute suit to collect $2,390.00 because each defendant concedes Ms. Webster was owed at least $2,390.00.
Discussion

First Assignment of Error

In her first assignment of error, Ms. Webster argues that the trial court erred in its determination that the June 15th letter was insufficient to interrupt prescription on her wage claim until the termination of the employment contract.
On the trial of a peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not *711 appear from the petition. La. C.C.P. art. 931; Jensen v. City of New Orleans ex rel. New Orleans Aviation Bd., 10-917, (La.App. 5 Cir. 8/29/11), 64 So.3d 298, 301. When evidence is introduced at a hearing on an exception of prescription, the trial court’s findings of fact are reviewed under the manifest error standard. Id., citing, Waguespack v. Judge, 04-0137, p. 4 (La.App. 5 Cir. 6/29/04), 877 So.2d 1090, 1092 (citation omitted). | „However, in the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, and all allegations thereof are accepted as true. Id. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Id. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Id.
In this case, Ms. Webster filed the Petition for Damages on August 22, 2008, alleging that she is owed unpaid wages from January 1, 2003 through August 25, 2005. On the face of the petition, Ms. Webster’s claim is partially prescribed because pursuant to La. C.C. art. 3494, a claim for unpaid wages for services rendered is subject to a three-year liberative prescriptive period. Thus, facially, the only claim that has survived prescription is that which accrued after August 22, 2005. Therefore, the burden shifts to Ms. Webster to show that the entirety of her claim has not prescribed.
Generally, the prescription period for wage disputes is governed by La. C.C. art. 3494 which states, “an action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees ...” is subject to a liberative prescription of three years. Brumberger v. Touro Infirmary, p. 3, 10-1221 (La.App. 4 Cir. 3/30/11), 63 So.3d 293, 295. La. C.C. art. 3495 further provides that “this prescription commences to run from the day payment is exigible. It accrues as to past due payments even if there is a continuation of labor, supplies, or other services.”
There does not seem to be a dispute in this case that Ms. Webster’s claim for unpaid wages is subject to a liberative prescriptive period of three years. Rather, the dispute centers on when the prescriptive period commences. This Court, | /however, has already resolved this issue in Doan v. Technical Engineering Consultants, Inc., 06-166 (La.App. 5 Cir. 9/26/06), 942 So.2d 1145.
In Doan, the plaintiff filed suit against his employer on July 14, 2005, alleging he had not been fully compensated for services rendered in February of 2001. In that case, the employer filed a peremptory exception of prescription, relying on La. C.C. arts. 3494 and 3495. The trial court granted the exception and dismissed the plaintiffs petition. On appeal, this Court cited to Comment B of La. C.C. art. 3495, which states, in pertinent part, “[o]n principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible.... Liberative prescription begins to run as soon as the action accrues, or, as Pothier said ‘the day on which the creditor could institute his demand.’” Doan, supra, at 1146. We explained that the plaintiff in Doan was “aware of the amount of compensation allegedly owed by the employer immediately after the work was completed. The amount allegedly owed was fixed and certain. Plaintiff could have instituted judicial demand against defendant at this time.” Id. at 1147. Likewise, in this case, Ms. Webster’s wages became exigible at the end of each day that she rendered services for Nash Roberts. Thus, the amounts due were fixed and certain at that time, and she could have instituted judicial *712 demand against Nash Roberts, despite remaining under his employ. See La. C.C. art. 3495.
Ms. Webster contends, however, that the June 15th letter interrupted prescription until either the employment relationship was terminated or until the contract was completed. Thus, she essentially construes the June 15th letter as a mechanism that deferred compensation until termination or completion. This Court, however, is unable to make that inference. At most, the June 15th letter |Rserved as an acknowledgment of unpaid wages that had accrued 18 months prior to June 15, 2004.
It is well-settled that prescription can be interrupted by acknowledgment. La. C.C. art. 3464; Brumberger v. Touro Infirmary, p. 3, 10-1221 (La.App. 4 Cir. 3/30/11), 63 So.3d 293, 295. The acknowledgment of a right in favor of a person can be written or verbal, express, or tacit. Id. Despite Ms. Webster’s assertion, there is no basis in the law that allows for a debtor to acknowledge a debt that has yet to come into existence. Thus, when the June 15th letter was executed, Ms. Webster only had the right to claim wages that had accrued up to that point. The letter could not have served to acknowledge financial obligations that accrued after its execution, because those obligations had not yet arisen. Thus, the June 15th letter interrupted prescription only for unpaid wages that accrued on or before June 15, 2004, thereby interrupting prescription on those particular wages until June 15, 2007.
In this case, Ms. Webster filed the Petition for Damages on August 22, 2008. Because a claim for unpaid wages is subject to a three-year liberative prescriptive period, all wage claims that became exigible on or before August 22, 2005 had already prescribed by the time the petition was filed. The record indicates that the only wage claim that arose after that date occurred on August 25, 2005 in the amount of $2,390.00. Thus, that is the only claim that has survived prescription. We, therefore, find no error in the trial court’s finding that Ms. Webster’s claim for unpaid wages had prescribed, except for her claim of $2,390.00 that became due and exigible on August 25, 2005. Therefore, this assignment of error is without merit.

19Second and Third Assignments of Error

In her second and third assignments of error, Ms. Webster contends that the trial court erred in failing to award her penalty wages and attorneys’ fees under La. R.S. 23:632. The judgments appealed from in this case only determined that Ms. Webster’s claim for unpaid wages in the amount of $2,390.00 has not prescribed. The judgments, however, do not address the merits of Ms. Webster’s unpaid wage claim. Therefore, any determination by this Court regarding penalties and attorneys’ fees is premature and not presently before this Court.
Accordingly, for the reasons previously discussed, we find that Ms. Webster’s claims against the Roberts and Penn Treaty, except for her claim in the amount of $2,930.00, have prescribed. Thus, the trial court’s judgments are affirmed.

AFFIRMED

. The record reflects that Ms. Webster initially only provided services for Ms. Lydia Roberts at a rate of $10 per hour. On January 1, 2003, however, Ms. Webster alleged that she also began providing services for Nash Roberts for an additional $5 per hour.

. The Insurance Commissioner of the Commonwealth of Pennsylvania had issued a rehabilitation order against Penn Treaty, thereby staying all pending litigation against it. Therefore, Penn Treaty and American Network's exceptions were not heard at the October 28, 2009 hearing.