JUDE G. GRAVOIS, Judge.
12In this consolidated appeal, plaintiff, Michael R. Holmes, appeals an October 9, 2013 trial court judgment awarding him $462.72 in unpaid wages allegedly due under a contract of employment with defendant, The Notary Shoppe, et al Inc., plus $750.00 in attorney’s fees, and costs and legal interest from date of judicial demand. He also appeals a February 6, 2014 trial court judgment rendered against him granting defendant’s motion to tax costs pursuant to La. C.C.P. art. 970 in the amount of $640.80 in costs and $750.00 in attorney’s fees. For the reasons that follow, we amend the October 9, 2013 judgment in favor of plaintiff to reflect that interest is due on the wages claim of $462.72 from the date the wages were due (March 24, 2007) until paid, and as amended, we affirm said judgment. We further reverse the February 6, 2014 judgment in favor of defendant on its motion to tax costs.

FACTS AND PROCEDURAL HISTORY

Plaintiff became employed by defendant in 2005 to perform notarial services. Defendant had multiple business locations in the metropolitan New Orleans area. In the course of his employment with defendant, plaintiff worked at 1 ^several of defendant’s different locations. However, at all times pertinent hereto, plaintiff worked exclusively at defendant’s location inside the Wal-Mart store on Tchoupitoulas Street in New Orleans.
Plaintiff was paid $10.00 per hour, plus a 10% commission on notarial services performed. On January 20, 2007, plaintiff sent a letter to his boss, Kathleen Bondio, defendant’s registered agent, stating that he was offered another employment position but preferred to remain working for defendant under different terms of employment, which he detailed in an attachment. Mrs. Bondio responded in a letter dated January 23, 2007, in which she rejected plaintiffs proposal and requested that he submit a two weeks’ resignation notice to defendant. It is undisputed that the last day plaintiff worked for defendant was February 2, 2007.
Plaintiff claimed that he never returned to work after February 2, 2007 because he suffered a back injury rendering him unable to work. Correspondence between plaintiff and Mrs. Bondio from January *1187 and February of 2007 was introduced into evidence. On February 12, 2007, Mrs. Bondio sent plaintiff a letter expressing her disappointment that he did not work through his two weeks’ resignation period, or call to explain his absence. She requested that he submit a timesheet for his last days of employment, and return his keys to the Tchoupitoulas Street location within three days.
Plaintiff responded to Mrs. Bondio in a letter dated March 9, 2007 in which he attached a timesheet for his last week of employment, and contended that she already had this information from logs he submitted each day. In his timesheet, plaintiff claimed he was owed $543.00 for 30.2 hours of work plus commissions for that week. He also claimed that he was owed commissions of $39.50 from September 15, 2006, supporting this contention with copies of transactions from that date. Further, he denied the assertion made in Mrs. Bondio’s February 12, |42007 letter that he had given her his two weeks’ notice of resignation in their previous telephone conversation. Instead, plaintiff contended that he had notified Mrs. Bondio of his relapsing back condition that prevented him from working. He claimed that he kept her apprised of his condition and work availability by phone and that their telephone conversation on February 9, 2007 indicated his intention to continue working.
Jodi Lanosga, the corporate representative of defendant, testified at trial that she prepared plaintiffs last paycheck after receiving his timesheet in his letter dated March 9, 2007, which she issued for the company’s next customary pay date of March 24, 2007. A certified letter sent by Mrs. Bondio to plaintiff on March 22, 2007 indicated that plaintiff could pick up his paycheck at defendant’s Tchoupitoulas Street location, as well as return the keys still in his possession to that location. Despite several requests, plaintiff never returned the keys and was seen behind the counter at the Tchoupitoulas Street location on March 30, 2007, whereupon Mrs. Bondio had the locks at that location changed. It is undisputed that plaintiff never retrieved his last paycheck or otherwise received it.
Plaintiff filed suit against defendant on January 22, 2010, seeking unspecified unpaid regular wages and unpaid overtime wages for unspecified time periods. Defendant filed an answer and an exception of prescription regarding plaintiffs claim for overtime wages, arguing that the two-year prescriptive period of the Fair Labor Standards Act, 29 U.S.C.A. § 255(a), applied. The trial court heard and granted this exception on August 19, 2010, and dismissed plaintiffs claim for overtime wages with prejudice.
The next activity of record in the case occurred on February 26, 2013, when plaintiff filed a motion to set the matter for trial on the merits. Trial was set for April 15, 2013, but was continued at the request of defendant. Plaintiff thereupon | ¿filed a motion for summary judgment, arguing that there was no genuine issue of material fact as to his claim for back wages for his last week of employment and several other weeks prior thereto; thus, he was entitled to judgment as a matter of law on these claims, in addition to penalty wages due under La. R.S. 23:632. Following defendant’s opposition to the motion for summary judgment and a hearing held on September 4, 2013, the trial court found that issues of material fact remained and denied the motion.
In the meantime, defendant filed a second exception of prescription on September 4, 2013, arguing that plaintiffs claim to additional back wages, as asserted in his motion for summary judgment, was prescribed under La. C.C. art. 3494, which *1188 sets forth a three-year prescriptive period for actions to recover back wages. The exception was heard in conjunction with the trial on the merits, which was held on September 19, 2013.
At trial, the court granted defendant’s exception of prescription, dismissing plaintiffs claims for back wages prior to January 22, 2007 with prejudice. On the main demand for plaintiffs last paycheck, the court ruled in favor of plaintiff, awarding him $462.72 on his claim for wages, plus attorney’s fees of $750.00, and costs and legal interest from the date of judicial demand. The trial court found that plaintiff was not entitled to penalty wages under La. R.S. 28:632. Plaintiff timely appealed this judgment.[1]
On October 2, 2013, defendant filed a motion to tax costs pursuant to La. C.C.P. art. 970, seeking all costs after May 4, 2010, asserting that defendant made an offer of judgment to plaintiff on that day, and the resulting judgment awarded at trial was 25% less than the offer of judgment. The matter was heard on December 2, 2013. On February 6, 2014, the trial court ruled in favor of defendant, casting | (¡plaintiff in judgment for $1,390.80, representing $640.80 in Clerk of Court costs paid by defendant since making the offer of judgment on May .4, 2010, and $750.00 in costs assessed at trial pursuant to La. R.S. 23:632. Plaintiff also timely appealed this judgment. Upon the lodging of plaintiffs second appeal, the matters were consolidated for appeal.
On appeal, plaintiff argues that the trial court erred in the following respects:
1. In granting defendant’s exception of prescription as to claims for overtime pay prior to two years before the filing of suit;
2. In granting defendant’s exception of prescription as to claims for unpaid or underpaid wages prior to three years before the filing of suit;
3. In awarding an amount of wages for the final week of work inconsistent with the testimony;
4. In failing to award plaintiff penalty wages in accordance with La. R.S. 23:632;
5. In failing to award attorney’s fees consistent with the testimony;
6. In failing to award legal interest from the date the obligation of defendant was due; and
7. In granting defendant’s motion to tax costs pursuant to La. C.C.P. art. 970.
FIRST AND SECOND ASSIGNMENTS OF ERROR — prescription
Plaintiff asserts that the trial court erred in granting the two exceptions of prescription filed by defendant: first, the exception pertaining to claims for overtime wages, and second, the claim pertaining to “regular” back wages.[2]

Overtime wages

On the trial of a peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not *1189 appear from the petition. La. C.C.P. art. |7931; Jensen v. City of New Orleans ex rel. New Orleans Aviation Bd., 10-917 (La.App. 5 Cir. 3/29/11), 64 So.3d 298, 301. When a party introduces evidence at a hearing on an exception of prescription, the trial court’s findings of fact are reviewed under the manifest error standard. Id., citing Waguespack v. Judge, 04-0137 (La.App. 5 Cir. 6/29/04), 877 So.2d 1090, 1092 (citation omitted). However, in the absence of evidence, an exception of prescription must be decided on the facts alleged in the petition, and all allegations thereof are accepted as true. Id. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Id. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Id.
This Court previously held in Webster v. Penn Treaty Network Am. Ins. Co., 12-90 (La.App. 5 Cir. 7/31/12), 99 So.3d 708, 711:
Generally, the prescription period for wage disputes is governed by La. C.C. art. 3494, which states, “an action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees ...” is subject to a liberative prescription of three years. Brumberger v. Touro Infirmary, p. 3, 10-1221 (La.App. 4 Cir. 3/30/11), 63 So.3d 293, 295. La. C.C. art. 3495 further provides that “this prescription commences to run from the day payment is exigible. It accrues as to past due payments even if there is a continuation of labor, supplies, or other services.”
In his petition for damages, plaintiff claimed that defendant failed to pay him for unspecified amounts of overtime wages without mention of a specified time period. Thus, prescription was not evident from the face of the petition. Following evidence produced by defendant during discovery, plaintiff clarified in later pleadings that he sought unpaid overtime wages dating back to 2006. Specifically, plaintiff sought overtime compensation from the weeks of March 19-25, 2006 (4 hours), April 9-15, 2006 (4.3 hours), May 14-20, 2006 (5.3 hours), September 3-9, 2006 (6 hours), September 10-16, 2006 (1.15 hours), September 24-30, 2006 (5 hours), October 29-November 4, 2006 (2 hours), November 12-18, 2006 (4.451 shours), January 7-13, 2007 (2 hours), and January 14-20, 2007 (2 hours), as noted by check stubs attached to pleadings.
Plaintiff filed this suit on January 22, 2010. In its exception of prescription as to plaintiffs claim for overtime wages, defendant argued that the Fair Labor Standards Act (“FLSA”), 29 U.S.C.A. § 255(a), preempted state law to govern plaintiffs claim for overtime wages, and provided only a two-year prescriptive period for unpaid overtime wages, citing Odom v. Respiratory Care, Inc., 98-263 (La.App. 1 Cir. 2/19/99), 754 So.2d 252, 256. However, a recent Third Circuit case disagreed with this First Circuit interpretation, holding that the FLSA overtime provisions preempt Louisiana state law only for employees engaged in interstate commerce; employees engaged in intrastate commerce may still recover unpaid overtime wages under La. R.S. 23:631-32. The court found that the statutory language in La. R.S. 23:631(A)(1)(a) does not distinguish between “regularly earned wages” and “overtime compensation,” as the First Circuit implied in Odom. Rather, the statute mandates through more encompassing language that the employer pay “the amount then due under the terms of employment.” Kidder v. Statewide Transp., Inc., 13-594 (La.App. 3 Cir. 12/18/13), 129 So.3d 875, 880.
Neither party introduced evidence regarding whether the nature of plaintiffs *1190 employment duties fell within interstate or intrastate commerce. However, irrespective of whether we apply the two-year prescriptive period under the FLSA or the three-year prescriptive period found in La. C.C. art. 3494, plaintiffs claims for overtime wages are prescribed, with the exception of the two hours of overtime claimed for the week of January 14-20, 2007; all other claims accrued more than three years prior to plaintiffs filing suit.
lnWe further find that plaintiff is not entitled to overtime pay for the week of January 14-20, 2007, because such amount was not due under his terms of employment. Ms. Lanosga, the corporate representative of defendant, testified that defendant prohibited employees from working “overtime,” i.e., hours before or after the regular store hours, unless specifically authorized by the owner. Despite submitting timesheets with “overtime” since 2006, as noted above, defendant never in fact paid plaintiff said overtime. Thus, contrary to plaintiffs assertions, the evidence established that his employer’s policy disallowed compensation for hours logged before or after the store hours of 10:00 a.m. and 5:00 p.m., respectively.
Plaintiff contends that the doctrine of contra non valentem applies to his prescription claim because he remained unaware that defendant had failed to pay his submitted “overtime” wages until discovery was conducted herein. Contra non valentem provides that when a claimant is not aware of the facts giving rise to his cause of action against a defendant, the running of prescription is suspended until the claimant discovers or should have discovered the facts on which the action is based. In re: Succession of Ferguson, 47,941 (La.App. 2 Cir. 5/29/13), 114 So.3d 1260, 1263. For purposes of contra non valentem, a plaintiff will be deemed to know what he could have learned with reasonable diligence. Caro v. Bradford White Corp., 96-120 (La.App. 5 Cir. 7/30/96), 678 So.2d 615, 618.
Plaintiffs arguments on this issue are unavailing. Plaintiff maintained a daily log of his hours and services performed. He submitted this information in a “time-sheet” once a week to defendant, who subsequently paid him based on these figures. The stubs attached to plaintiffs paycheck clearly illustrate his hourly rate and the number of hours for which he was compensated, in addition to ' his commissions. Plaintiff could have reasonably compared his own records to his paycheck in order to confirm the accuracy of these payments, without apparent^difficulty, but apparently failed to do so. Accordingly, contra non valentem did not suspend the running of prescription on plaintiffs claim for overtime wages. Upon review, we find no manifest error in the trial court’s decision to grant defendant’s exception of prescription regarding plaintiffs claim for overtime wages.

Back wages

Defendant also filed an exception of prescription as to plaintiffs claim involving commissions for services performed on September 15, 2006. The trial court also granted this exception of prescription during the trial of the matter. Applying the prescriptive period of La. C.C. art. 3494 to this claim and employing the same reasoning as above, we find that plaintiffs claim has prescribed because suit was not filed thereon until January 22, 2010. Further, the doctrine of contra non valentem also does not apply in this instance. The evidence indicates that plaintiff knowingly submitted his timesheet to defendant for that particular week without the information regarding the amount charged for that service. Plaintiff neglected to obtain and submit these figures in a timely manner so that defendant could pay him for the date in question. Accordingly, upon *1191 review, we find that the trial court was not manifestly erroneous in granting the exception of prescription regarding this claim.

THIRD ASSIGNMENT OF ERROR— award for wages due

Plaintiff next argues that the trial court erred in awarding him only $462.72 on his wage claim for his last pay period, rather than the $543.00 he claimed was owed. For the following reasons, we affirm this award by the trial court.
As previously noted, plaintiff submitted a “timesheet” for his last week of employment to defendant via a letter dated March 9, 2007. Therein, he claimed that he worked 30.2 hours during his last week of employment, as well as [ n performed notarial services valued at $2,410.00, entitling him additionally to commissions of $241.00. Plaintiff claimed that he worked Monday, January 29, 2007, from 10:00 a.m. to 5:30 p.m.; Tuesday, January 30, 2007, from 9:00 a.m. until 5:30 p.m.; Wednesday January 31, 2007, from 10:00 a.m. until 4:30 p.m.; and Friday, February 2, 2007, from 10:00 a.m. until 5:50 p.m. Thus, the total wage claim plaintiff submitted for the last week of his employment totaled $543.00, from which plaintiff did not deduct the customary tax withholdings and other deductions.
However, as per its policy communicated by Ms. Lanosga during trial, defendant only paid plaintiff for those hours worked during the store’s business hours, as was previously done with plaintiff since 2006, and as noted in the previous assignments of error. Thus, defendant deducted 30 minutes from Monday, 1 hour and 30 minutes from Tuesday, and 50 minutes from Friday, for a total deduction of 2 hours and 50 minutes worth of unauthorized hours; thus, plaintiffs hours for his last week of employment were lowered to 27.25, which defendant then rounded up to 27.3 hours, according to the paycheck documents defendant entered into evidence. Plaintiffs gross pay was then reduced by the usual deductions for taxes, Medicare, and Social Security.
Upon review, we find no error in the trial court’s award for wages due. The award was appropriately based upon plaintiffs timesheet given to defendant and submitted into evidence in conjunction with defendant’s established policy of only compensating employers for hours worked during business hours. Accordingly, the award of $462.72 for wages due is affirmed.
FOURTH ASSIGNMENT OF ERROR — penalty wages
Plaintiff also argues that the trial court erred in failing to award him penalty wages pursuant to (1) La. R.S. 23:631, which states, in pertinent part:
|12A.(1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
* * *
(2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee’s or laborer’s current address as shown in the employer’s records. In the event payment is made by mail the employer shall be deemed to *1192 have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service,
and (2) La. R.S. 23:632, which states:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
La. R.S. 23:631 and 632 are penal in nature and must be strictly construed; their provisions must yield to equitable defenses. McFarland v. Texhoma Contractors, Inc., 449 So.2d 1106, 1109 (La.App. 5 Cir.1984).
The trial court declined to award penalty wages to plaintiff because defendant acted neither arbitrarily or capriciously in delaying plaintiffs payment. For the following reasons, we find no error in this regard.
The evidence indicates that plaintiff kept a daily log of his time and commissions during the usual course of employment. He submitted a weekly | istimesheet based on these logged figures to the owner of the company, whereupon his paycheck would be prepared. Defendant paid plaintiff on a weekly basis. During the relevant time periods, plaintiff worked exclusively at defendant’s Tchoupitoulas Street location, where he received his weekly paychecks.
The evidence indicates that plaintiff did not send his timesheet to defendant for his last week of employment, which ended on February 2, 2007, until he included it in a letter to defendant dated March 9, 2007. Ms. Lanosga testified that upon receiving the timesheet in that letter, she prepared plaintiffs paycheck, as evidenced by the stub prepared by her accounting software. Ms. Lanosga testified she believed that the check was sent to plaintiff by certified mail; however, it may have been returned. On occasion during this time period, plaintiff testified that he ignored certified mail notices because he thought they were du-plicative of letters he had already claimed. Plaintiff testified that he never received a certified letter from defendant dated March 22, 2007 informing him of his available paycheck and a request for the return of the store keys. Ms. Lanosga testified the check was left in the store’s safe once returned unclaimed in the mail, in accordance with their standard pay procedures, but plaintiff never retrieved the check. It was undisputed that plaintiffs last paycheck was never cashed.
Plaintiff argues that defendant could have prepared his check much earlier since it possessed the daily logs upon which plaintiff based his final timesheet. However, the usual and customary practice involved the submission of a timesheet for the entire week, which plaintiff did not do until March 9, 2007. The evidence shows that defendant subsequently either mailed plaintiff his check, as provided by the statute, or stored it at the work location, per customary practice and as also provided by the statute. Plaintiff did not meet his burden of proving that the failure to receive his last paycheck was the fault of defendant. Plaintiff likewise failed to *1193 |14show that defendant placed conditions on the receipt of his paycheck. Accordingly, upon review, we find no manifest error in the trial court’s conclusion that defendant did not act arbitrarily or capriciously, and thus find no error in the trial court’s decision not to award plaintiff penalty wages.

FIFTH ASSIGNMENT OF ERROR— attorney’s fees award

Plaintiff next argues that the trial court erred in awarding him only $750.00 in attorney’s fees when he presented some evidence that his attorney’s fees exceeded that amount. Specifically, plaintiff introduced an invoice from his first attorney in the amount of $1,500.00, as well as an “employment contract” with his trial attorney which contained a contingency payment clause.
An employee who brings a well-founded suit for unpaid wages is entitled to mandatory attorney’s fees, irrespective of any defenses which his employer may raise. McFarland v. Texhoma Contractors, Inc., supra; Labadie v. Physician Network Corp. of Louisiana, Inc., 01-1180 (La.App. 5 Cir. 1/29/02), 805 So.2d 1278, 1282.
In evaluating the reasonableness of attorney’s fees awarded in wage cases under La. R.S. 23:632, courts have applied the following factors from Rivet v. State, Dept. of Trans. and Dev., 96-0145 (La.9/5/96), 680 So.2d 1154, 1161, in determining whether the trial court abused its discretion in its award, to-wit: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge. See Labadie v. Physician Network Corp. of Louisiana, Inc., supra.
| ^Considering the above factors, we note that the facts of this case were not complex or intricate and the law in this area is relatively well settled. The matter lay dormant for approximately two years after some initial proceedings. Defendant prevailed in its exceptions of prescription; plaintiff did not prevail in his motion for summary judgment. The amount at issue was relatively small. Accordingly, upon review, we find no abuse of the trial court’s discretion in the amount of its award of attorney’s fees to plaintiff.

SIXTH ASSIGNMENT OF ERROR—interest

Plaintiff next argues that the trial court erred in awarding interest from the date of judicial demand, rather than from the date the wages were due, as per La. C.C. art. 2000. This article states, in pertinent part:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500.
We agree with plaintiffs arguments on this issue. The object of plaintiffs performance was a sum of money, his wages. Plaintiff is entitled to interest thereon from the date the wages were due, rather than the date of judicial demand. As noted above, wages were not due until plaintiff furnished defendant with his timesheet, as per defendant’s customary employment procedures. Thus, we find that wages for plaintiffs last pay period were not due until March 24, 2007, which was the next scheduled pay date after defendant received plaintiffs timesheet, as per the testimony of Ms. Lanosga.
*1194 SEVENTH ASSIGNMENT OF ERROR — judgment on motion to tax costs
Plaintiffs final argument is that the trial court erred in granting defendant’s motion to tax costs against him pursuant to La. C.C.P. art. 970.[3] He argues that the 11fioffer of judgment on May 4, 2010 failed to comply with the statutory requirements of Article 970(A), namely that “[t]he offer of judgment shall be in writing and state that it is made under this Article; specify the total amount of money of the settlement offer; and specify whether that amount is inclusive or exclusive of costs, interest, attorney fees, and any other amount which may be awarded pursuant to statute or rule.”[4]
As this Court recently stated in Carcamo v. Raw Bar, Inc., 12-294 (La.App. 5 Cir. 11/27/12), 105 So.3d 936, 938:
Louisiana Code of Civil Procedure Article 970 provides for the payment of *1195 costs when an offer of judgment has been made and rejected. The purpose of Article 970 is to compensate the rejected offeror who was forced to incur greater trial litigation costs than he would have if the offeree had accepted his settlement offer. Hacienda Construction, Inc. v. Newman, 10-18 (La.App. 5 Cir. 6/29/10), 44 So.3d 333, 337. Article 970 is punitive in nature and, therefore, must be strictly construed. Id.
117Plaintiff argues that the offer of judgment failed to comply with La. C.C.P. art. 970(A) because the offer of $750.00 failed to state whether it was “inclusive or exclusive of costs, interest, attorney fees, and any other amount which may be awarded pursuant to statute or rule.” Plaintiff notes that defendant was cast in judgment, interest thereon, and attorney’s fees, which were mandatory under La. R.S. 23:632 upon prevailing on a wage claim. Thus, the judgment rendered on October 9, 2013 totaled $2,275.45, which clearly exceeds the unspecified $750.00 offered by defendant.
Upon review, we agree with plaintiffs position that, given the punitive nature of Article 970 and the requirement that it be strictly construed, the failure of defendant’s offer of judgment to state whether it was “inclusive or exclusive of costs, interest, attorney fees, and any other amount which may be awarded pursuant to statute or rule” requires that the judgment of February 6, 2014 in favor of defendant and against plaintiff be reversed.

CONCLUSION

For the reasons assigned above, the judgment of October 9, 2013 in favor of plaintiff is affirmed as amended, to reflect that interest is due on the wage claim of $462.72 from the date wages were due (March 24, 2007) until paid. The judgment of February 6, 2014 in favor of defendant on its motion to tax costs is hereby reversed. Costs of this appeal are assessed equally between the parties.

JUDGMENT OF OCTOBER 9, 2013 AFFIRMED AS AMENDED; JUDGMENT OF FEBRUARY 6, 2014 REVERSED.

. Appeals from judgments of the parish courts are governed by La. C.C.P. art. 5002.

. In brief, defendant notes that these two judgments were not appealed. We find, however, that the judgments granting the exceptions of prescription were not final judgments as per La. C.C.P. art. 1915(B) because they adjudicated fewer than all of the claims raised by plaintiff in this suit. Nor were the judgments certified as immediately appealable as per Article 1915(B)(1). Accordingly, these judgments are properly on review to this Court following appeal from the final judgment.

. La. C.C.P. art. 970 provides:
A. At any time more than twenty days before the time specified for the trial of the matter, without any admission of liability, any party may serve upon an adverse party an offer of judgment for the purpose of settling all of the claims between them. The offer of judgment shall be in writing and state that it is made under this Article; specify the total amount of money of the settlement offer; and specify whether that amount is inclusive or exclusive of costs, interest, attorney fees, and any other amount which may be awarded pursuant to statute or rule. Unless accepted, an offer of judgment shall remain confidential between the offeror and offeree. If the adverse party, within ten days after service, serves written notice that the offer is accepted, either party may move for judgment on the offer. The court shall grant such judgment on the motion of either party.
B. An offer of judgment not accepted shall be deemed withdrawn and evidence of an offer of judgment shall not be admissible except in a proceeding to determine costs pursuant to this Article.
C. If the final judgment obtained by the plaintiff-offeree is at least twenty-five percent less than the amount of the offer of judgment made by the defendant-offeror or if the final judgment obtained against the defendant-offeree is at least twenty-five percent greater than the amount of the offer of judgment made by the plaintiff-offeror, the offeree must pay the offeror's costs, exclusive of attorney fees, incurred after the offer was made, as fixed by the court.
D. The fact that an offer is made but not accepted does not preclude a subsequent offer or a counter offer. When the liability of one party to another has been determined by verdict, order, or judgment, but the amount or extent of the damages remains to be determined by future proceedings, either party may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than thirty days before the start of hearings to determine the amount or extent of damages.
E. For purposes of comparing the amount of money offered in the offer of judgment to the final judgment obtained, which judgment shall take into account any additur or remittitur, the final judgment obtained shall not include any amounts attributable to costs, interest, or attorney fees, or to any other amount which may be awarded pursuant to statute or rule, unless such amount was expressly included in the offer.
F. A judgment granted on a motion for judgment on an offer of judgment is a final judgment when signed by the judge; however, an appeal cannot be taken by a party who has consented to the judgment.

. Defendant’s “Offer of Judgment” simply stated:
Pursuant to Civil Code Article 970, Defendants offer $750 for offer of Judgment. Failure to accept this offer will result in payment of all costs incurred after the offer has been made pursuant to Article 970(c).