JUDE G. GRAVOIS, Judge.
| ¡Jn this suit against the State of Louisiana, plaintiff Frank LaBruzzo[1] appeals a trial court judgment that found his suit for compensation for the State’s commandeering the use of his property adjacent to the 17th Street Canal in Jefferson Parish, as per La. R.S. 29:730, was prescribed under La. R.S. 13:5111, having been filed more than three years after plaintiff knew of facts sufficient to apprise him of his cause of action. For the reasons that follow, we affirm.

PROCEDURAL HISTORY

On May 9, 2013, plaintiff filed suit against the State of Louisiana, through the Governor and the Division of Administration, State Land Office (hereinafter, “the State”), alleging in his petition that he owned immovable property that was included within the “Commandeering Land” that was “taken or commandeered” by the State pursuant to Executive Order No. KBB 2006-6 issued by Louisiana Governor Kathleen B. Blanco on February 10, 2006, pursuant to La. R.S. 29:721 et seq., the Louisiana Homeland Security and Emergency Assistance and Disaster 1 ¡¡Act. This Executive Order, a copy of which was attached as an exhibit to plaintiffs petition, “commandeer[ed] the use” of certain immovable property located in Jefferson Parish, in Sections 121 and 122, Township 12 South, Range 11 East, containing approximately 10.2 acres, as shown on a map attached thereto, to be used for levee and floodwall construction and repair at the 17th Street Canal north of the Hammond Highway Bridge (the “Project”). In the Executive Order, the State “commandeered the real property interests” and provided that the “owners of the property so commandeered shall be identified and compensated” in accordance with the terms of a cooperative agreement between the United States of America and the Orleans Levee District.
Plaintiff alleged in his petition that “[s]ince the date of the Constructive Taking [2] [of his property] and at least since the issuance of the Executive Order commandeering [his] property on February 10, 2006 through the date of the filing of this Petition, [he] has continually been prevented from exercising his right of ownership of such property.” Plaintiff further alleged in his petition that “[o]n February 13, 2006, work on the Project started, work that does not and has not used [his] Prop *169 erty commandeered by the Executive Order.” Plaintiff further specifically alleged that “[w]ith the commandeering or taking of [his] property by means of the Constructive Taking and/or the Executive Order, [he] ha[s] been divested of his ability to access and use the property.” Plaintiff further alleged that he had not been tendered or provided with any compensation whatsoever as a landowner under the terms of the Executive Order or as per La. R.S. 29:730(F), nor had he ever been contacted by the State.
Defendant, the State of Louisiana, filed various exceptions to plaintiffs petition, including exceptions of no cause of action, no right of action, prematurity, Rand prescription. Following a hearing on the exceptions on October 18, 2013, the trial court denied all of the exceptions except for the State’s exception of prescription, which was granted and memorialized in a written judgment dated November 6, 2013. Plaintiff filed a motion for a new trial, which was denied on January 13, 2014. This devolutive appeal followed.
On appeal, plaintiff asserts the following assignments of error, to-wit:
1) The district court erred as a matter of law by ruling that no finding of a taking was necessary for the takings prescription statute, La. R.S. 13:5111, to protect the State from its act of commandeering of use;
2) The district court erred by misidentifying plaintiffs date of discovery sufficient to trigger the running of prescription under La, R.S. 13:5111;
3) The district court further erred by failing to recognize plaintiffs defenses of suspension and interruption of any accrual of prescription; and
4) The district court further erred by allowing the State to acquire de facto title to immovable property via liber-ative prescription of three years, despite the Supreme Court’s prohibition on governmental entities acquiring prescriptive title.

ANALYSIS

With respect to the burden of proof as to a peremptory exception raising prescription, this Court has previously stated:
The party urging a peremptory exception raising prescription bears the burden of proof. Only if prescription is evident from the face of the pleadings will the plaintiff bear the burden of showing an action has not prescribed. In the absence of evidence, the objection of prescription must be decided upon the properly pleaded material allegations of fact alleged in the petition, and those alleged facts are accepted as true. In reviewing a peremptory exception raising the objection of prescription, appellate courts strictly construe the statutes against prescription and in favor of the claims that is said to be extinguished.
Trust for Melba Margaret Schwegmann v. Schwegmann Family Trust, 09-968 (La.App. 5 Cir. 9/14/10), 51 So.3d 737, 742-43. (Citations omitted.)
Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. However, if prescription is evident on the face of the |fipleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Holmes v. Notary Shoppe, et al Inc., 14-22 (La.App. 5 Cir. 5/28/14), 139 So.3d 1183, 1189.
The Louisiana Homeland Security and Emergency Assistance and Disaster Act provides that “in order to effectuate the provisions of this Chapter, the governor may issue executive orders, proclamations, and regulations and amend or rescind them. Executive orders, proclamations, and regulations so issued shall have the force and effect' of law.” La. R.S. *170 29:724(A). Further, the governor has the statutory authority to “commandeer or utilize any private property if he finds this necessary to cope with the disaster or emergency,” subject to any applicable requirements for compensation. La. R.S. 29:724(D)(4). In this case, it is not disputed that Executive Order KBB 2006-6 was promulgated pursuant to the above statutory provisions, nor does plaintiff allege any deficiency in said Order.
Paragraphs (E), (F), and (G) of La. R.S. 29:730 specifically provide that a landowner may be compensated for the value of the land so commandeered or used, to-wit:
E. Compensation for property shall be paid only if the property was commandeered or otherwise used in coping with a disaster emergency and its use, damage, or destruction was ordered by the governor or a member of the disaster emergency forces of this state.
F. Any person claiming compensation for the use, damages, loss, or destruction of property under this Chapter shall file a claim therefor with the authority which ordered the use or caused the loss or destruction of the property.
G. Unless the amount of compensation on account of property damaged, lost, or destroyed is agreed between the claimant and the authority which ordered the use or caused the damage, the amount of compensation shall be calculated in the same manner as compensation due for a taking of property pursuant to the condemnation laws of this state.
[(¡The prescriptive period applicable to a claim for compensation following a taking by the State other than through an expropriation proceeding is found in La. R.S. 13:5111(A), which provides:
A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.
(Emphasis added.)
The three-year prescriptive period of La. R.S. 13:5111 begins to run from the date of discovery of the taking. Anderson v. Bossier Parish Police Jury, 45,639 (La.App. 2 Cir. 12/15/10), 56 So.3d 275, 287, citing Unlimited Horizons, L.L.C. v. Parish of East Baton Rouge, 99-0889 (La.App. 1 Cir. 5/12/00), 761 So.2d 753. However, while it is true that prescription does not begin to run until discovery of facts which give rise to a cause of action, it is equally clear that ignorance of one’s legal rights based upon known facts does not suspend or delay the running of prescription. Hawthorne v. Louisiana Dep’t of Pub. Works, 540 So.2d 1261, 1263 (La.App. 3 Cir.1989), writ denied, 544 So.2d 406 (La.1989).
The petition in this case, filed in May of 2013, alleged in paragraph 12 that “[sjince the date of the Constructive Taking and at *171 least since issuance of the Executive Order commandeering Plaintiffs property on February 10, 2006, through the date of the filing of this Petition, Plaintiff has continually been prevented from exercising his right of ownership of such property.” Further, in 17paragraph 14 of his petition, plaintiff specifically asserted that he has been “divested of his ability to access and use the property.” Thus, it is clear that plaintiffs petition is prescribed on its face, plaintiff admitting therein of having notice since at least February of 2006 of facts that the State had commandeered his property and furthermore had restricted him from access to and use of his property. Accordingly, the burden of proof was on plaintiff to show that his suit was not prescribed.

ASSIGNMENTS OF ERROR NOS. ONE AND TWO

In his first assignment of error, plaintiff argues that the district court erred as a matter of law by ruling that no finding of a “taking” was necessary for the takings prescription statute, La. R.S. 13:5111, to protect the State from its act of commandeering of use. Plaintiff further argues in his second assignment of error that the district court erred by misidentifying his date of discovery of facts sufficient to trigger the running of prescription under La. R.S. 13:5111. These related assignments are discussed together.
At the hearing on the exceptions, plaintiff argued that prescription did not begin to accrue on his claim until March of 2013, when in the Sidr-Mar’s case,[3] the trial court ruled in a summary judgment that the State’s Executive Order in question had effected a taking of the Sid-Mar’s restaurant property, which is not the same property that plaintiff claims to own.[4] Plaintiffs counsel contended that the Statens alleged strategy in the Sidr-Mar’s case was to argue that the commandeering was not a taking and was thus not compen- . sable. Though plaintiff | «in this case had not filed his own suit or made a claim with the State under La. R.S. 29:730 prior to this suit, his counsel suggested that had he done so, the State would have also argued that its commandeering order was not a taking. Plaintiffs counsel also argued that the State was required to expropriate plaintiffs property and that the State’s failure to institute an expropriation proceeding against plaintiffs property was improper or contrary to law.
Plaintiffs arguments in these assignments of error are unavailing for several reasons. First, the trial court did not rule as a matter of law in this case that no “taking” was necessary in order to commence the running of prescription for plaintiffs claim for compensation. The trial court was merely responding to plaintiffs counsel’s argument about the applicability of the ruling in the Sid-Mar’s case to this case. We find that the rulings in the Sid-Mar’s case are not relevant to the instant case because the two suits involve different parcels of immovable property and issues that are specific and exclusive to each • parcel. Thus, a ruling on the merits of Sid-Mar’s particular claims is *172 not definitive with respect to plaintiffs legal rights regarding a different parcel of property. Further, the only ruling on appeal in this case is the one finding that plaintiffs cause of action for compensation was prescribed.
Much of the argument between the parties on this issue centers around the parties’ perceived differences in the definitions of “commandeering” versus “taking.” The thrust of the arguments appears to assume that “commandeering” is a temporary taking or a taking for temporary use, whereas “taking” is a permanent deprivation of ownership, and that the difference is pertinent to when plaintiffs right to compensation arises.
In light of the statutory scheme in La. R.S. 29:721, et seq., clearly providing that landowners may be compensated for land “commandeered” for use thereunder, |flany differences in the two definitions is irrelevant to a landowner’s right to compensation.[5] However, the plain wording of La. R.S. 29:730(E), (F), and (G), quoted in full above, supports our determination here that -a commandeering is, in fact, a particular kind of statutory taking.[6] These paragraphs speak of compensation for the use, damages, loss, or destruction of the commandeered property. When the commandeering is temporary, the property is “used” or perhaps suffers “loss” or “damage.” When the commandeering results in a permanent deprivation to the owner, the statute allows the owner compensation for “destruction” of the property. Whether the commandeering is temporary or permanent is relevant to the calculation of damages owed a landowner, but is not relevant to determine the point in time in which a landowner is put on notice that the State has interfered with his rights of ownership. Once a landowner is put on notice that his property has been commandeered, he must timely assert his rights to compensation. Because we find that a commandeering of property under La. R.S. 29:724(D)(4) falls within the definition of a “taking”, the applicable prescriptive period for a landowner to sue for compensation as a result of such “taking” is found in La. R.S. 13:5111.
The commencement of prescription begins when a plaintiff has notice of facts that apprise him that he might have a claim against the State for the commandeering. Plaintiff here clearly knew in 2006, as alleged in his petition, that the State had issued a commandeering order affecting his immovable property and had restricted his exercise of ownership rights by preventing his access to and use of his property. Plaintiff argues, however, that prescription did not commence |inuntil the trial court ruled in the Sid-Mar’s case in 2013 that a taking of the Sid-Mar’s restaurant property had occurred. However, we find that plaintiffs arguments on this point are without merit.
In Hawthorne v. Louisiana Dept. of Public Works, supra, the Third Circuit faced a similar argument in an appropriation case. Therein, the plaintiffs filed suit against the State of Louisiana (DOTD) for damages resulting from the permanent inundation of their property caused by construction of the Jonesville Lock and Dam. Although the plaintiffs’ property had permanently flooded since 1972, the plaintiffs *173 did not file suit until 1981, claiming that they were unaware they had a cause of action against the State until the court ruled in the Boothe case[7] that the same construction project had appropriated the Boothes’ property. The Third Circuit rejected this argument, finding that prescription began to run from late 1972 when the plaintiffs were fully aware of the fact of their property’s permanent flooding resulting from the operation of the lock and dam. The court noted that nothing prevented the Hawthornes from filing their suit timely, as the Boothe plaintiffs did, and that their misunderstanding, if there was any, as to their legal rights did not toll the running of prescription under La. R.S. 13:5111.
Likewise, while plaintiff here claims ignorance of his legal rights until such time as the trial court ruled in the Sid-Mar’s ease in 2013, he does not explain why he knew enough facts to attempt to intervene (ie., assert his legal rights) in 2008 in at least two suits filed by neighboring landowners and assert therein the same or similar claims as herein, but did not file his own suit until 2013.[8] Accordingly, the trial court did not err in finding that the date of the Sidr-Mar’s summary judgment ruling did not trigger the commencement of prescription on plaintiffs claims.
Further, the State was not required to expropriate plaintiffs property in order to receive the “same protections” as in a “taking.” Expropriation is one statutory method by which the State may acquire title or rights to private land. The Louisiana Homeland Security and Emergency Assistance and Disaster Act clearly provides another statutory scheme whereby the State may legally commandeer private property for use or to take the same for emergency or disaster response, subject to the right of the landowner to be compensated therefor.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. THREE

In his third assignment of error, plaintiff argues that the district court further erred by failing to recognize that his intervention in two other landowners’ suits interrupted or suspended prescription on his claims, rather than triggered the commencement of prescription. Plaintiff cites several Civil Code articles on prescription, namely La. C.C. arts. 3462, 3463, and 3466, but no pertinent jurisprudence.
This Court has already determined above that prescription in this case commenced upon plaintiffs receipt of facts sufficient to apprise him that he had a cause of "action against the State. Those facts, as alleged in his petition and noted above, show that plaintiff was on notice regarding the State’s actions by February of 2006. Thus, plaintiffs intervention in two other lawsuits did not trigger the commencement of prescription against him. Plaintiff argues, however, that his two interventions interrupted prescription on his claims.
Louisiana Civil Code article 3462 states, in pertinent part, that “[prescription is interrupted when the owner commences action against the possessor, or when the obligee commences an action against the obligor, in a court of competent jurisdiction and venue.” In the instant case, *174 plaintiff contends that h¡.the filing of interventions in the prior suits interrupted prescription on the cause of action sued upon herein, per La. C.C. arts. 3462, 3463 and 3466.
To be allowed to intervene, the challenge is two-fold: the intervener must have a justiciable interest in, and a connexity to, the principal action. “[Jjusticiable right” as it is used in the context of an intervention is “the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it.” The jurisprudence has held that the justiciable right must be “so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervener’s rights.” See Clulee v. Giambelluca, 08-645 (La.App. 5 Cir. 5/12/09), 15 So.3d 214, 221, writ denied, 09-1324 (La.9/25/09), 18 So.3d 72.
In the present case, the record shows that plaintiff intervened in two lawsuits that were filed by neighboring landowners for compensation for the State’s commandeering of their property under the same Executive Order. On March 8, 2008, Mr. LaBruzzo filed a motion to intervene in the aforementioned Sidr-Mar’s case. The plaintiffs in the Sidr-Mar’s case opposed the intervention on the grounds that their claims involved different parcels of land under different ownership, thus Mr. La-Bruzzo had no justiciable interest in or connexity to the principal action as per La. C.C.P. art. 1091. Mr. LaBruzzo voluntarily withdrew his motion to intervene on April 24, 2008 without a ruling, as reflected by a minute entry from that case.
On March 6, 2008, Mr. LaBruzzo also filed an intervention in Carissa Marina Balfore Trust v. State of Louisiana, No. 648-285, of the 24th Judicial District Court. In that suit, the plaintiff Trust sought compensation from the State for land it owned subject to the same Executive Order at issue in this case. Mr. |13LaBruzzo was allowed to intervene in that suit because he claimed in his petition of intervention that he was owner or part owner of the Trust property at issue in the suit. Mr. LaBruzzo’s intervention in the Balfore Trust case concerned different immovable property from the property that forms the basis of the instant suit. On August 5, 2008, summary judgment was granted in favor of the plaintiff Trust and against Mr. LaBruzzo, ruling that the Trust was the sole owner of the property at issue therein, and that Mr. LaBruzzo had no right to any proceeds in that action.
We also note that the First Circuit has held that an intervention in a first suit, which was dismissed on an exception of no right of action, did in fact interrupt prescription on a plaintiffs separate suit filed later. In Vaughn v. City of Baton Rouge, 09-930 (La.App. 1 Cir. 5/26/10), 39 So.3d 799, the landowners, the Vaughns, filed suit against the City and the State for damages to their property caused by flooding in a ditch. Their petition was prescribed on its face, so in an effort to meet their burden of proof, they introduced into evidence a suit filed by the Randolphs, a neighboring landowner, concerning the same flooding ditch, to which the Vaughns had intervened.[9] The Randolphs had timely filed suit against the City and the State alleging damages to their property caused by rainwater accumulating in a •ditch and flooding their property.[10] The *175 Randolphs filed an exception of no right of action relative to the Vaughns’ intervention, which was granted. The First Circuit in Vaughn held that the Vaughns’ petition of intervention, filed in the Ran-dolphs’ suit (which had been filed within one year of a flood in a ditch near the two homes and claiming damages resulting therefrom), was sufficient to judicially notify the State of the legal demands of the Vaughns for damages later asserted in a separate suit filed by them within one year from when lutheir intervention was dismissed. Thus, the Court found that the Vaughns’ intervention in the Randolphs’ suit interrupted prescription on the Vaughns’ separate suit, even though the .intervention was improper, where the Vaughn’ petition in the second action contained the same facts and bases of liability against the State that had been included in petition of intervention.
Having found that the Vaughns’ intervention interrupted prescription on their own claims, the Court went on to discuss the effect of the interruption:
An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue within the prescriptive period continues as long as the suit is pending. La. C.C. art. 3463. If an interruption results and the action is dismissed without prejudice, the period during which the action was pending does not count toward the accrual of prescription. The plaintiff then has the full prescriptive period within which to bring a new action. La. C.C. art. 3463, Revision Comments-1982, comment (b). Thus, the dismissal of the Vaughns’ petition of intervention, without prejudice, as inappropriate pursuant to an exception raising the objection of no right of action did nothing to undermine the timely judicial notice afforded to' the State by that filing. Cf. La. C.C. art. 3463.2. The Vaughns had one year from the date of the September 29, 2008 dismissal of their intervention to file their petition for damages. See La. C.C. art. 3466. Having filed their petition on November 12, 2008, the Vaughns’ claims for damages were timely asserted.
Vaughn, supra, at 801-802. (Footnote omitted.)
Upon review, we find that Vaughn is distinguishable from the instant case. In the two interventions filed by Mr. LaBruz-zo, the one in the Balfore Trust case was dismissed on the merits, it being found that Mr. LaBruzzo had no ownership interest in the Trust property. Thus, this intervention did not serve to interrupt prescription on Mr. LaBruzzo’s claims in the instant suit because there was no identity between the two claims, unlike in the Vaughn case where both the Vaughns’ intervention and their later filed suit sought damages for injury to the same property. Further, Mr. LaBruzzo’s intervention in the Sid-Mar’s case was voluntarily withdrawn.
| ifjlt appears that both Mr. La-Bruzzo’s intervention in the Sid-Mar’s case and his petition in instant suit allege his ownership of the same property, the portion of Square 129, and sought compensation for the State’s commandeering of its use. However, even if prescription was interrupted by the intervention in the Sid-Mar’s case, the prescriptive period began to run anew once the petition for intervention was dismissed. Thus, assuming for argument’s sake that Mr. LaBruzzo’s voluntary withdrawal of his intervention on April 24, 2008 has the same legal effect as a dismissal without prejudice as in Vaughn, the three,-year prescriptive period of La. R.S. 13:5111 began to run anew as of that date. Mr. LaBruzzo had, therefore, until April 24, 2011 in which to file his *176 own lawsuit. This suit, filed in May of 2013, is thus clearly prescribed.[11]
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. FOUR

In his final assignment of error, plaintiff argues that the trial court erred by allowing the State to acquire de facto title to immovable property via liberative prescription of three years, despite the Supreme Court’s prohibition on governmental entities acquiring prescriptive title.
In this case, the only ruling the trial court made was that plaintiffs cause of action for compensation for the acts of the State had prescribed. The trial court made no ruling regarding the title to the property at issue. Thus, plaintiffs |1fiargument is unsupported by the record. In any event, in a takings or commandeering case, the State acquires particular rights in or title to the land, not by prescription, but by virtue of its compliance with the particular statutory scheme cited in the commandeering or taking. The only thing determined by prescription in this suit was the legal enforceability of plaintiffs cause of action for compensation for the commandeering.
This assignment of error is without merit.

CONCLUSION

Accordingly, for the foregoing reasons, the trial court judgment granting the State’s peremptory exception of prescription is affirmed. All costs of this appeal are taxed to plaintiff.
AFFIRMED.

. In the record, plaintiff's last name is spelled “La Bruzzo” in some places and “LaBruzzo” in other places. For consistency, we will use “LaBruzzo” as plaintiff's last name in this opinion.

. Plaintiff's petition does not define what the "Constructive Taking” was or when such occurred.

. See Sid-Mar’s Rest. & Lounge, Inc. v. State ex rel. Governor, 14-52 (La.App. 5 Cir. 5/21/14), 142 So.3d 188.

. In Sid-Mar’s, the issue on appeal was whether the trial court erred in finding that the plaintiff in Sid-Mar’s, rather than the State, owned the land in Square 128 subject to the Executive Order. The State had argued that the Sid-Mar’s restaurant property consisted of a former lake bed, which, if so, -was owned by the State and was insusceptible of divestiture of ownership by acquisitive prescription in favor of a private landowner. It is further noted that the plaintiffs in Sid-Mar’s filed suit in June of 2006.

. The Louisiana Homeland Security and Emergency Assistance and Disaster Act contains no prescriptive statute of its own. ■

. “Commandeer” is defined in merriam-web-ster.com as "to seize for military purposes” and "to take arbitrary or forcible possession of.” "Take” is defined in the same source as "to get into one's hands or into one’s possession, power, or control”, "to seize or capture physically”, and "to acquire by eminent domain”.

. Boothe v. Dept. of Public Works, 370 So.2d 1282 (La.App. 3 Cir.1979), writ denied, 374 So.2d 661 (La.1979), which involved other landowners similarly affected by the Jones-ville Lock and Dam.

. These two suits are discussed infra.

. The Court found that the one-year liberative prescription applied in this case. The intervention was filed within one year of the flooding and damages.

. Liability was premised on the improper maintenance of the pump and the ditch.

. In anotlier First Circuit case that the Vaughn court distinguished, the Court in Hazey v. McCown, 01-0929 (La.App. 1 Cir. 5/10/02), 818 So.2d 932, held that an unauthorized filing of an intervention in a pending action does not interrupt prescription on the cause of action asserted in the intervention. The Court found that an intervention was an incidental action, not the commencement of an action. In that case, individuals associated with one corporation filed suit against individuals associated with a second corporation, alleging assault, battery, and infliction of emotion distress arising out of a billing dispute between the two corporations. This suit was prescribed on its face. In order-to meet their burden of proof that the second suit was timely filed, plaintiffs introduced evidence that they had filed an intervention in the first suit, which was between the two corporations. The appellate court noted that plaintiffs’ intervention in the first suit has been dismissed pursuant to a no right of action to intervene, that ruling implicitly stating that plaintiffs did not assert a right related to or connected to the object of the prior suit. Accordingly, the Hazey Court found that the unauthorized filing of an intervention in a pending action did not interrupt prescription on the cause of action asserted therein. However, as the Vaughn Court noted, the record in Hazey was devoid of any evidence of when the first suit was filed, when the intervention was filed, and whether the intervention alleged the same facts and occurrences as the second suit.