LOBRANO, Judge.
Keith Patrick Landry (Landry) brought suit against the Board of Commissioners of the Orleans Levee District (Levee Board) seeking damages for injuries he sustained when, after ascending the Lake Poncha-train seawall, he lost his balance and fell while trying to avoid stepping into a partially hidden hole adjacent to the seawall. The lower court found the Levee Board to be strictly liable, but reduced the amount of the award by two-thirds, attributing that amount of fault to Landry.
Both parties have appealed. We find it unnecessary to consider all of the various issues raised because we reverse on the basis of La.R.S. 9:2791 and 9:2795.
The evidence shows that on April 4, 1982 Landry went to the Lake Pontchartrain seawall between West End and Canal Boulevard to go crabbing. This area is owned and maintained by the Levee Board. He parked his car on the lake side of Lake-shore Drive, walked across a grassy area to the seawall, descended the seawall and proceeded to set his nets. After about an hour and a half, he retrieved the nets, placed them on top of a basket and ascended the seawall to return to his car. As he reached the “cap” or top of the seawall,[1] he *760 noticed a rather large hole adjacent to the seawall in the grassy area that was partially obscured by weeds and other debris. In an attempt to avoid the hole he lost his balance and fell injuring his knee.
The trial court reasoned:
“The lakefront of New Orleans is a recreational area, with parking bays and benches inviting visitors to use it. The presence of the hole presented an unreasonable risk of harm to people in plaintiffs position.”
The Levee Board argues that it is immune from liability because of La.R.S. 9:2791 and 9:2795. Those statutes provide:
La.R.S. 9:2791:
“A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not there by extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word ‘premises’ as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.”
La.R.S. 9:2795:
“A. As used in this Section:
(1) ‘Land’ means land, roads, water, water courses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) ‘Owner’ means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) ‘Recreational purposes’ includes, but is not limited to any of the following, or any combination thereof; hunting, fishing, trapping, swimming, boating, camping picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreational purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) ‘Charge’ means the admission price or fee asked in return for permission to use lands.
(5) ‘Person’ means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby;
(1) Extend any assurance that the premises are safe for any purpose.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
*761 D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences • of failure to employ such care.”
The purpose of R.S. 9:2795 is “... to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.” Acts 1975, No. 615, Section 1. See also Pratt v. State of Louisiana, 408 So.2d 336 (La.App. 3rd Cir.1981), writ den. 412 So.2d 1098 (La.1982).
It has been held that the above cited statutes are applicable to the State and its subdivision or agencies, as well as individual landowners. Keelen v. State, 454 So.2d 147 (La.App. 1st Cir.1984), writ granted 459 So.2d 527 (La.1984); Thomas v. Jeane, 411 So.2d 744 (La.App. 3rd Cir.1982); Pratt v. State, supra; Rushing v. State, Through La. Health and Human Resources Admin., 381 So.2d 1250 (La.App. 1st Cir.1980). Landry argues, however, that the statutes should not apply since the area where he was injured does not constitute privately owned State lands, but are public lands which cannot be alienated by the State. That is, he argues since Lake Ponehartrain is an arm of the sea, its borders are seashore, and thus are dedicated to public use, or held in trust by the State for public uses. He urges that the immunity statutes should apply only to those areas which are owned by the state in a private capacity, citing La.C.C. Articles 450, 451 and 453.
We find it unnecessary to decide whether or not the immunity statute applies to “public” lands of the State since the defect which caused Landry’s accident is clearly not part of the seashore of Lake Ponehartrain. La.Civil Code Article 451 defines seashore as:
“Seashore is the space of land over which the waters of the sea spread in the highest tide during the winter season.”
It is true that Lake Ponehartrain is an arm of the sea, and those areas classified as the seashore are public property, not subject to private ownership. See, A.K. Roy, Inc. v. Board of Commissioners for the Ponchartrain Levee District, 283 La. 926, 117 So.2d 60 (1960). However the evidence in this case ’is clear that the area where the accident occurred is not part of the seashore. Earl Magner, Jr., civil engineer with the Levee Board testified under a proffer that the top or cap of the seawall is 7.2 feet above mean sea level. The average high tide during the period November 1981 thru March 1982 was 1.2 feet above mean sea level, with the highest tide recorded at 2.33 feet. He testified that the Levee Board has gauges at various locations along the lakefront which measure the tides every four hours. His testimony on this issue is most relevant to the issues in this case and should have been allowed.
We reject Landry’s argument that the seashore should be the entire area that may be inundated with water at various times during the year. As stated in A.K. Roy, Inc., supra “... what counsel would have this court do is amend or rewrite the article of the civil code on the subject — a prerogative that belongs under our system of government to the legislature.” 117 So.2d at 62.
We are mindful of the recent Supreme Court decision of Keelen v. State of Louisiana, 463 So.2d 1287, decided February 25, 1985 (after this case was briefed and argued). However, we are of the opinion that the facts of that case are easily distinguishable from the instant case. Although we agree that the lakefront area of New Orleans is part of an urban locale, “[e]xa-mination of the characteristics of the land alone does not end the inquiry into whether the statutes apply to a particular factual situation.” Keelen, supra, p. 1290. In the Keelen case the alleged injury causing condition or instrumentality was a swimming pool characterized by the court as “... the type usually found in someone’s backyard ...” Id. at p. 1290. The injury causing condition in this case is a hole in the *762 ground, quite different from the swimming pool. The legislative intent set forth in Keelen indicates that the immunity granted by the statutes is to encompass property which is used for recreation pursued as part of the “true outdoors.” The activities of Landry, in our opinion, clearly fall within that interpretation.
As recognized by the trial judge, the lake front area is a recreational facility maintained by the Levee Board. Landry was using the facility for recreational purposes. We therefore hold that the above cited statutes are applicable and reverse the decision of the lower court. All costs to be paid by Landry.
REVERSED.

. There is confusion in his testimony as to whether only one or both of his feet had reached the top.