JUDE G. GRAVOIS, Judge. -
I gin this inverse condemnation proceeding, defendant/appellant, State of Louisiana, through the Governor and/or the Division of Administration, State Land Office (“the State”), appeals an award’of damages to plaintiffs/appellees, Sid-Mar’s Restaurant & Lounge) Ihc. (“Sid-Mar’s”), Marion Gemelli Burgess (“Mrs.Burgess”), and her son, Sidney Kent Burgess (“Mr.Burgess”).[1] Plaintiffs filed suit against the State on June 2, 2006, alleging that their réstaurant property in Bucktown in Jefferson Parish was commandeered/taken by the State on February 10, 2006, by Executive Order KBB 2006-6, issued by then Governor Kathleen Blanco pursuant to La. R.S. 29:721, et seq., the Louisiana Homeland Security and Emergency Assistance and Disaster Act, for a flood control project on the 17th Street Canal following Hurricane Katrina. Previously, the State defended its refusal to compensate plaintiffs for the taking of their restaurant property by claiming that the property where' Sid-Mar’s had operated since 1972 was formerly lake bottom of Lake Pontchartrain not subject to ownership by third parties Isthrough acquisitive-prescription, and thus was owiied by the State. The trial1 court, however, determined that plaintiffs owned the property in question, rather than the State, and thus found the State liable to plaintiffs for takings damages.. That judgment was amended and affirmed by this Court in Sid-Mar’s Restaurant & Lounge, Inc. v. State, 14-52 (La.App. 5 Cir. 5/21/14), 142 So.3d 188, writ denied, 14-1292 (La.9/26/14), 149 So.3d 267 (“Sid-Mar’s I”).
A bench trial for compensation took place in November of 2014. By judgment dated February 10, 2015, the trial court awarded plaintiffs compensation for the value of the land taken ($1,111,732.00), economic damages (lost business profits and lost wages' of plaintiffs totaling $808,-249.00[2]), and mental anguish damages ($50,000.00 each to Mrs. Burgess and Mr. Burgess) (the “damages judgment”). In a separate judgment signed that same day, the trial court awarded plaintiffs attorneys’ fees in the amount of $849,749.59, plus litigation fees and costs (the “fees and costs judgment”).
. The State appealed aspects of both judgments. Regarding the damages judgment, the State does not appeal the award made for the value of the land taken. The State argues, however, that La. Const. Art. I, § 4(G) and La. R.S. 49:214.6.5, which govern the scope of damages for property taken for hurricane control projects, are to be applied' retroactively to limit plaintiffs’ eoinpensation to only the fair market value of plaintiffs’ property, as per the Fifth Amendment to the United States Constitution, and thus plaintiffs are not entitled under the law to economic damages or mental anguish damages. In the alternative, the State argues that plaintiffs are not entitled to a greater amount of mental *393 anguish damages in the event .this Court finds that the Fifth Amendment standard does not control to limit plaintiffs’ compensation.
|4The State also argues that the ten years’ worth of economic damages awarded to plaintiffs was excessive and not supported by the evidence. It argues that plaintiffs are only entitled to economic damages for a reasonable time period, not to exceed four years from the determinative date, as discussed below.
' Lastly, the ‘State’ argues that plaintiffs are entitled to interest on the damages award only from the date of judicial demand (June 2, 2006), not from the date of the taking (February 10,2006).
Plaintiffs/appellees answered the appeal. Regarding the fees and costs judgment, plaintiffs argue that the trial, court should have increased the attorneys’ fees awarded in the judgment below to include attorneys’ fees plaintiffs incurred in separate, related -litigation in federal court. Regarding the damages judgment, plaintiffs argue that they are entitled to a greater amount of mental anguish damages. Further, plaintiffs filed a motion with, this Court seeking an award of attorneys’ fees incurred on appeal.
For the following reasons, we find that La. ; Const. Art. I, § 4(G) and La. R.S. 49:214.6.5 apply prospectively only, and thus do not apply to limit plaintiffs’ available compensation under the Fifth Amendment standard. Further, we affirm the amount of economic damages awarded to plaintiffs. However, we reverse the award of mental anguish damages awarded to plaintiffs, findipg that as a matter of law, plaintiffs are not entitled to mental anguish damages for this non-tortious taking.
We also find no merit to plaintiffs’ assertion that they are entitled, under La. R.S. 13:5111, to attorneys’ fees for the related federal court proceeding, and thus affirm the fees and costs judgment. We affirm the trial court’s award of interest from the date of the taking as to the award for the land value and the economic | ^damages. Finally, we decline to remand this matter for an award for additional attorneys’ fees to plaintiffs for defending this appeal.

FACTS AND PROCEDURAL HISTORY

The factual and procedural history of this case was set forth ■ in this Court’s previous opinion in Sidr-Mar’s I and will not be repeated here. • Suffice it to say that therein, the issue of the ownership of the restaurant property was litigated, with the trial court rejecting the State’s position that the restaurant property had previously been part of the lake bottom of Lake Pontchartrain and thus was insusceptible of private ownership by acquisitive prescription. That judgment is now final. Pertinent to this appeal, the compensation trial was held on November 10 and 12, 2014. After taking the matter under advisement, the trial court entered two judgments in .favor of plaintiffs on February 10, 2015, as noted above. The State moved for a suspensive appeal, which was granted, and plaintiffs answered the State’s appeal.

ASSIGNMENT OF ERROR NUMBER ONE

Scope of the Damages

First, the State argues that the only compensation to which plaintiffs are entitled for the State’s taking is the fair market value of the land itself, according to the Fifth Amendment of the United States Constitution (the “Fifth Amendment standard”), and , thus are not entitled to economic damages or. mental anguish damages. The State argues that La. R.S. 49:214.6.5, which was effective on July 10, 2009 and which limits compensation to *394 landowners for certain takings damages, was clearly intended by the Legislature to apply retroactively to claims such as plaintiffs’ for private property taken prior to the statute’s effective date for hurricane protection projects. The State also argues that the amendment to the Louisiana Constitution passing Art. I, § 4(G), effective in October of 2006, should |fialso be applied retroactively. The State argues that the amended § 4(G) and R.S. 49:214.6.5 control over the more general rights found in La. Const. Art. I, § 4(B), which allows landowners subject to takings to receive compensation to the full extent of their losses.[3]
The starting point of our analysis is La. Const. Art. I, § 4(B), which stated at the time of the taking in question:
B. Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the oumer shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. (Emphasis added.)
La. Const. Art. I, § 4(G) was added by constitutional amendment (Acts 2006, No. 853) in October of 2006, after the taking in question. This section states in full:
G. Compensation paid for the taking of, or loss or damage to, property rights for the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, including mitigation related thereto, shall not exceed the compensation required by the Fifth Amendment of the Constitution of the United States of America. However, this Paragraph shall not apply to compensation paid for a building or structure that was destroyed or damaged by an event for which a presidential declaration of major disaster or emergency was issued, if the taking occurs within three years of such event. The legislature by |7law may provide procedures and definitions for the provisions of this Paragraph. (Emphasis added.)
La. R.S. 49:214.6.5 states in full:
A. Pursuant to Article I, Section 4(G) and Article VI, Section 42(A) of the *395 Constitution of Louisiana, compensation paid for the taking of, or loss or damage to, property rights affected by the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, including mitigation related thereto, shall not emceed the compensation required by the Fifth Amendment of the Constitution of the United States of America.
B. For the purposes of this Section, “full extent of the loss” as provided in any law or rule affecting taking of property for the purposes set forth in Subsection A of this Section shall mean compensation required by the Fifth Amendment of the Constitution of the United States of America..
C. The provisions of this Section shall supersede and control to the extent of conflict with any other provision of law.
D. As provided in Article I, Section 4(G) of the Constitution of Louisiana, the provisions of this Section shall not apply to compensation paid for a building or structure that was destroyed or damaged by an event for which a presidential declaration of major disaster or emergency was issued, if the taking occurs within three years of such ' event.
(Emphasis added.)
The State argues that the language contained in paragraph C of R.S. 49:214.6.5, which states that the new law “supersedes and controls,” evidences the Legislature’s “clear intent” to apply this statute retroactively to claims that arose prior to its passage. We disagree, as did the trial court, and find no merit to the State’s position on this point.
In M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La.7/1/08), 998 So.2d 16, 30-34, the Supreme Court reiterated the framework of analysis courts must employ to determine whether laws are to be applied retroactively. The Court stated:
When determining whether a statute should be applied retroactively, a court must defer to the Legislature’s intent. La. Civ) sCode art. 6; (internal citations omitted). Article 6, entitled “Retroac-tivity of laws,” provides:
In the absence of contrary legislative expression, substantive laws, apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
A related statute, La.Rev.Stat. § 1:2, provides:
No Section of the Revised Statutes is retroactive unless it is expressly so stated.
This statute, unlike1 [Ajrticle 6, does not distinguish between substantive, procedural and interpretive laws. However, the jurisprúdence has consistently construed the two provisions as being co-extensive, with La.Rev.Stat. § 1:2 having limited applicability to substantive legislation. (Internal citations omitted.)
This Court has interpreted the retro-activity provisions of La, Civ.Code art. 6 and La.Rev.Stat. ,§ 1:2 to require a twofold inquiry: First, we must ascertain whether the Legislature expressed in the enactment its intent regarding retrospective or prospective application. If the Legislature did so, our inquiry is at an end. If the Legislature did not, we must classify the enactment as substan- *396 five, procedural or interpretive. (Internal citations omitted.)
# . I ⅜! ⅜
This Court has had many opportunities to examine language the Legislature has employed in various enactments it has passed and to comment on whether such language expressly provided for retroactive, application. See, e.g. Mallard Bay Drilling, Inc. v. Kennedy, 04-1089 (La.6/29/05), 914 So.2d 533, 543 (Section 2 of the Act provides that its provisions are interpretive of La.Rev. Stat. § 47:305.1 and “shall be applicable to all claims existing or actions pending on its effective date and to all claims arising or actions filed on and after its effective date.”); Morial v. Smith & Wesson Corp., 00-1132 (La.4/3/01), 785 So.2d 1, 10 (“Act 291 contains a clear and unmistakable expression of legislative intent regarding its intended temporal effect. Section 2 of the Act states that its provisions ‘shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on , and after its effective date.’ ”); Cole v. Celotex Corp., 599 So.2d at 1064-65 (evidence of a clear expression of legislative intent to apply the comparative negligence law only prospectively through the legislature’s inclusion of the clause: “‘[t]he provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective.’ ”) —
The first step under Article 6 and La.Rev.Stat. '§ 1:2, determining whether the Legislature expressly provided for | ^retroactive application, is resolved by examining the specific language contained in the Act....
Acts 2009, No. 523, which enacted La. R.S. 49:214.6.5, contains no language evidencing legislative intent for retroactivity.[4] This absence can be compared, for instance, to language contained in Acts 2003, No. 583 (specifically § 2), which enacted La. R.S. 49:213.10, and which limited landowners’ compensation to the Fifth Amendment standard for property taken for coastal restoration projects.[5] This statute’s enactment language (Acts 2003, No. 583 § 2) specifically provided that “[t]he provisions of this Act shall be applied both prospectively and retroactively and shall be applied to all pending and’ existing and future claims and property interests covered by the provisions of Section 1 of this Act.” Such language exhibits a clear and unmistakable legislative'intent for retroactive application, language which is completely absent from Acts 2009, No. 523.
The Supreme Court, in M.J. Farms, noted quite accurately that the Legislature understands the concept of statutory ret-roactivity and regularly employs such language in various statutes or their enacting language to evidence its intent. The lack of such language here, regarding either R.S. 49:214.6.5, R.S. 49:214.5.6, or La. C,onst. Art. I, § 4(G), is a very strong indication that the Legislature did not intend R.S. 49:214.6.5 to apply retroactively to claims for compensation for inverse condemnation that arose prior to its enactment.
*397 The language contained in Section C of R.S. 49:214.6.5 relied upon by the State must be read fully and in context. We find that the language “shall supersede and control to the extent of conflict with any other provision of law” clearly does |innot address the issue of retroactivity or give a temporal effect to the new law, but states instead that to the extent some other statute may be found that addresses a landowner’s right to compensation for the State’s taking for a federal or nonfederal hurricane protection project, this particular statute will control over the other. Thus, we find no clear expression of legislative intent, in either the enacting language or- the statute itself, for the statute to apply retroactively to takings that occurred prior to its enactment.
The State next argues that R.S. 49:214.6.5 was meant to clarify and interpret another statute, R.S. 49:214.5.6, that was passed in the same enactment," and thus applies retroactively to limit plaintiffs’ compensation, because prior versions of R.S. 49:214.5.6, namely La. R.S. 49:213.10 (repealed in the same enactment that passed R.S. 49:214.5.6 and R.S. 49:214.6.5), contained an explicit retroactivity provision (as noted above) in that statute’s enactment language in 2003, prior to this taking.
As , the State’s argument goes, in 2Q03, La. Const. Art. I, § 4(F) was amended .to allow the Legislature to the limit compensation to landowners subject to state takings actions. Also in 2003, prior to this taking, the. Legislature enacted R.S. 49:213.10, which applied to limit compensation to the Fifth Amendment standard to landowners whose property was taken for coastal restoration projects. This statute’s enactment language (Acts 2003, No. 583 § 2) specifically provided, “The provisions of this Act shall be applied both prospectively and retroactively and shall, be applied to all pending and existing and future claims and property interests covered by the provisions of Section 1 of this Act.” Such language exhibits a clear and unmistakable legislative intent for retroactive application..
In 2006, after the Sid-Mar’s property was taken and after plaintiffs filed suit against the State, R.S. 49:213.10 was amended to include, in that limitation of | ^compensation, land taken for hurricane control projects. However, the act that passed the 2006 amendment thereto did not contain any language providing for retroactive application of, this particular amendment, .quite unlike the- language found in the 2003 act that, enacted R.S. 49:213.10. And then in Acts 2009, No. 523, R.S. 49:213.10 was repealed and its substance was subsumed within the new statute, R.S. 49:214.5.6. This 2009 act contains no language evidencing the legislative intent for retroactive application.
The history of R.S. 49:214.5.6’s evolution actually goes against the State’s position that R.S. 49:214.6.5 should apply retroactively. The, fact that the legislature, in 2003, explicitly made R.S. 49:213.10 retroactive in application, but then failed to explicitly state that the 2006 amendment thereto was to be applied retroactively as well, strongly discredits the State’s position for retroactivity for the new R.S. 49:214.5.6 or the argument that the new R.S. 49:214.6.5 was meant to “interpret” or explain the new R.S. 49:214.5.6.
Though this point was only briefly argued in the motion for partial summary judgment hearing, it also appears that express language in both La. -Const. Art. I, § 4(G) and R.S. 49:214.6.5 precludes application of either section’s limitation on compensation to these plaintiffs. R.S. 49:214.6.5(D) states:
As provided in Article I, Section 4(G) of the Constitution of Louisiana, the provi *398 sions of this Section shall not apply to compensation paid for a building or structure that was destroyed or damaged by an event for which a presiden- : tial declaration of major disaster or emergency was issued, if the taking occurs within three years of such event.
It is a fact that a presidential declaration of major disaster and/or emergency was issued for the event of Hurricane Katrina, and that plaintiffs’ property was taken within three years of the event The restaurant building or structure that was formerly upon that land was destroyed by the event, Hurricane Katrina: Plaintiffs’ |, 2land was taken by the State for a hurricane control project. Though it could be argued that the compensation the State owes plaintiffs for the taking was for the land and not the building, the building was destroyed by the hurricane, as per the statute. The permanent taking of the restaurant land necessarily foreclosed any possibility of the restaurant (building or structure) being rebuilt.[6]
We note that at least one Louisiana state court has found that § 4(G) does not apply to takings that occurred prior to this section’s passage. See Borgnemouth Realty Co. v. Parish of St. Bernard, 13-1651 (La.App. 4 Cir. 5/21/14), 141 So.3d 891.
' The trial court also found that R.S. 49:214.6.5 was a substantive law not subject to retroactive application. We agree. Prior 'to the statute’s enactment, plaintiffs whose land was taken for hurricane control projects were not limited to compensation under the Fifth Amendment standard. The limitation on compensation provided by R.S. 49:214.6.5 took away those plaintiffs’ rights to compensation for types of damages caused by the taking other than the value' of the land itself, which is a substantive change‘in the law. See Terrebonne v. South Lafourche Tidal Control Levee Dist., 445 So.2d 1221, 1223-24 (La.1984) (holding that changes to'the measure of compensation in takings case are substantive, not merely procedural or remedial).
Accordingly, we find no error in the trial court’s conclusion that R.S. 49:214.6.5 applies prospectively only, is substantive legislation, and thus does not apply to limit plaintiffs’ compensation for this taking to the Fifth Amendment standard.

haMental Anguish Damages

Both parties appeal the award of mental anguish damages to Mrs. Burgess and Mr. Burgess. - As part of its first assignment of error, the State argues that plaintiffs are not entitled to mental anguish damages (general damages) for this taking by inverse condemnation, because such taking action does not sound in tort, citing Mathis v. DeRidder, 90-1240 (La.App. 3 Cir. 4/16/92), 599 So.2d 378. In their Answer to the appeal, plaintiffs argue that they are entitled to an increase in the amount of the award for mental anguish damages. In response thereto, the State argues alternatively that if mental anguish damages were indeed properly awarded, the amount of damages awarded were well within the trial court’s great discretion and should not be increased. For the following reasons, we find that as a matter of law, plaintiffs are not entitled to an award of damages for mental anguish for ah inverse condemnation that was not the result of an unlawful or tortious act of the State.
Questions of law are not reviewed on appeal under the manifest error/clearly *399 ■wrong standard of review. When addressing questions of law, a reviewing court conducts a de novo review. Ranger Ins. Co. v. Shop Rite, Inc., 05-452 (La.App. 5 Cir. 1/17/06), 921 So.2d 1040, 1042.
The trial court, citing Williams v. City of Baton Rouge, 98-1981, 98-2024 (La.4/13/99), 731 So.2d 240, found that Mrs; Burgess and Mr. Burgess were each entitled to an award of $50,000.00 for mental anguish. In Williams, the court affirmed an award of mental anguish damages to the plaintiffs after it found that the City of Baton Rouge was a bad faith trespasser when it dug three wide canals across the plaintiffs’ properties. In a thorough review of existing jurisprudence on the issue, the' Williams Court held that when an inverse condemnation . “taking” occurred by an act of the governmental authority that wag tortious, in bad faith, or | uotherwise unlawful in nature, a plaintiff-landowner was not limited to, compensatory damages for inverse condemnation, but was also entitled to assert a cause of action for tort damages under La. C.C. art. 2315. The jurisprudence reviewed by the Williams Court shows that where general damages were allowed in inverse condemnation cases, the governmental authority was either in bad faith, committed a trespass on the plaintiffs land, or the taking action was otherwise unlawful- or tortious in nature. See Williams, 731 So.2d at 247 (cases cited therein).
The Williams Court distinguished cases where the taking resulting in the inverse condemnation was not tortious or otherwise unlawful. For example, general damages were not allowed when the taker was found to have made an inverse condemnation of the plaintiffs land through a “good faith error” in an expropriation proceeding (See Gray v. State Through Dept. of Highways, 250 La. 1045, 202 So.2d 24 (La.1967)). Nor were general damages al-lowéd when, through “oversight or lack of foresight,” the'State failed to expropriate the plaintiffs property that was adjacent to other, expropriated property for a highway construction project (See Reymond v. State, 255 La. 425, 231 So.2d 375 (La.1970)).
Thus,-, the trial court’s reliance- on Williams as its basis to award the Bur-gesses mental anguish damages under the facts of this case is an error- of law. Williams provides no authority - for - an award general .'damages to a plaintiff in an inverse condemnation case where the taking authority’s actions were, lawful. The taking in this case was lawful: the State commandeered plaintiffs’ land pursuant to the statutory authority granted to it by La. R.S. 29:721, et seq.[7] The State, thus, is [1Bnot a tortfeasor in this case. Accordingly, plaintiffs are not entitled, as a matter of law, to general damages for a statutory taking.[8] .
*400 Mathis, supra, a Louisiana Third Circuit case from 1992 relied upon by the State and-which was decided before Williams, is in line with the rule in Williams, -i Mathis concerned a servitude of drain appropriated by the City of DeRidder. The City obtained the proper state and federal permits to discharge treated sewerage effluent from its treatment plant into Barnes Creek, which traversed the plaintiffs’ land. The City, however, neglected to obtain ser-vitudes of drain from the plant’s downstream neighbors. The plaintiffs alleged injury and. inverse condemnation from the stream’s increased volume; prior to the effluent’s discharge, the creek had been an intermittent stream rather than a permanent one. Holding that the City could have expropriated such creek, the court found that the plaintiff landowners were limited to inverse condemnation damages, not tort damages. Notably absent from the opinion is any assertion that the City of DeRidder was in bad faith, committed a trespass, or otherwise took unlawful actions.
The Mathis court looked at jurisprudence from ' both before and after- the amendment to La. Const. Art. I, § 4. The jurisprudence considered by the court in Mathis clearly shows that the allowance of mental anguish damages in an inverse condemnation case is associated with the State’s conduct in the taking, tortious or statutory, and not amendments to Art. I, § 4 of the State constitution.
Plaintiffs rely on Holzenthal v. Sewerage & Water Bd., 06-0796 (La.App. 4 Cir. 1/10/07), 960 So.2d 56, 79, to support their claim for mental anguish damages. |1fiHowever, that case is distinguishable. Holzenthal noted that in Louisiana;, an award for mental anguish resulting from property damage is permissible in limited situations: (1)- when property is damaged by an intentional or illegal act; (2) when property is damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) when property is damaged by acts constituting a continuing nuisance; or (4) when property is damaged when the owner is either present or nearby and suffered a psychic trauma as a direct result. ■ The Holzenthal case involved inverse condemnation and a claim for strict tort liability under La. C.C. art. 667 for serious property damage sustained by those plaintiffs caused by a Sewerage & Water Board construction project involving timber pile and sheet metal driving. Mental anguish tort damages were awarded to the plaintiffs because the Sewerage & Water Board knew or should have known that the project would- likely result in damage to neighboring properties, but failed to take adequate steps to prevent that foreseeable damage. ■
Plaintiffs also rely on Mitter v. St. John the Baptist Parish, 05-375 (La.App. 5 Cir. 12/27/06), 920 So.2d 263, 265, but that case is also distinguishable from the present case in that it, like Holzenthal, also involved general tort claims and tort claims under La. C.C. art. 667, when the Parish’s actions in alleviating drainage problems in an adjacent subdivision resulted in erosion, flooding, and stagnated water on the plaintiffs property.
Plaintiffs also argue in their brief that the extended years of litigation entitled them to a mental anguish award. Plaintiffs cite no authority for the position that a plaintiff is- entitled to mental anguish damages for having to engage in litigation, however complex or time-consuming, with *401 the taking authority.[9] While the state court case was delayed by the condemnation actions filed by the 117United States in federal court, and’ no doubt such delays were a source of anxiety to plaintiffs, such an action by the United States is not legally attributable to the State. For the foregoing reasons, the awards for mental anguish damages in favor of Mrs. Burgess and Mr. Burgess are reversed. Correspondingly, the claim made by plaintiffs in their Answer to this appeal for an increase in the amount of the award for mental anguish damages is denied.

Assignment of error NUMBER TWO

Economic damages

Next, the State argues that the award of ten years’ worth of economic damages to plaintiffs was unreasonable and contrary to jurisprudence.- The State argues that this, time period is excessive and should be lowered to something around four years from the first time at which reopening the restaurant was feasible, which corresponds approximately to the date in 2010 when Mr. .Burgess opened a new Sid-Mar’s restaurant in Metairie at a different location. The State cites State, DOTD v. Dietrich, 555 So.2d 1855 (La.1990), in support of its position.
In reviewing a court’s factual conclusions with regard to special damages, an appellate court must satisfy a two-step process baséd on the record as a whole: there must be no-reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong. Dufrene v. Gautreau Family, LLC, 07-467 (La.App. 5 Cir. 2/22/08), 980 So.2d 68, 82.
In Phillip Family L.L.C. v. Bayou Fleet P’ship, 12-565 (La.App. 5 Cir. 2/21/18), 110 So.3d 1158, 1167-68, writ denied, 13-0641 (La.4/26/13), 112 So.3d 846, this Court explained the standard of appellate review of a trial court’s findings of fact based on expert testimony, to-wit:
|isln considering expert testimony, a trial court may accept or reject, in whole or in part, - the opinion expressed by an expert. The effect and weight to be given to expert testimony is within the broad discretion of the trial judge. The trier of fact may accept or reject any expert’s view, even .to the point of sub- . stituting its own . common sense and judgment for that of an expert witness where, in the fact-trier’s opinion, such substitution appears warranted by the evidence as a whole.' The decision reached by the trial court regarding expert testimony will not be disturbed on appeal absent a. finding that the trial court abused its broad discretion.
In Dietrich, supra, cited by both parties, the defendants in that expropriation case were awarded past economic damages of four years (between the taking and the trial), and future economic damages by a jury based on the life' expectancy of the defendant landowner, or future economic damages for approximately 39 years. The Court of Appeal reversed on the basis that the awards were contrary to law and fact. The Supreme Court reinstated the jury’s finding that past and future economic losses were due, and found that four years’ past economic damages (from the date of the taking to the time of trial) and four years future economic damages (from the time of the trial) was reasonable given the facts of that particular- case. In reducing the award of future economic losses from *402 the defendant’s life expectancy, the high .court noted that absent special circumstances, a property owner cannot “retire for life” from the taking of a business, but instead should be limited to the reasonable period of time required for the landowners to reestablish their business in a new location, However, the Dietrich court noted that an economic damage award may reflect the economic effect of. “protracted judicial proceedings.”
’ In the instant case, the trial court was presented with expert' testimony on the issue of economic damages from both plaintiffs and defendant. Plaintiffs’ expert regarding economic damages was William G. 'Stamm, C.P.A., who prepared séveral reports during the course of this litigation regarding economic damages. 11flThe State presented the expertise of Dr. W. Patton Culbertson. A review of the expert reports and testimony shows that while each expert employed a different methodology to arrive at their “base” numbers for average. . annual adjusted income, those amounts t actually differed only minimally. The issue, therefore, as framed by the State’s brief, is whether the trial court abused its discretion in awarding plaintiffs economic damages for ten total years, which the State argues is excessive under the facts of this case. The State agrees that some economic damages are due to plaintiffs, but argues economic damages should cease as of the date the new Sid-Mar’s opened in Metairie in 2010.
The State argues that awarding plaintiffs ten years of lost profits and ten years of lost wages for Mr. Burgess is excessive and unreasonable given -the fact that Sid-Mar’s did in fact reopen in 2010. It argues that Mr. Stamm’s opinion was flawed in that it gave undue weight to the old Sid-Mar’s location and its loyal client base, which apparently did not follow to the new Sid-Mar’s that opened in Metairie in 2010.
Mr. Stamm testified that he was personally familiar with Sid-Mar’s restaurant and other restaurants in the Bucktown/West End area prior to the storm. His testimony, and the testimony of Mr. Burgess, noted that Sid-Mar’s location was special, unique, and a primary factor of the success of the restaurant prior to the storm. Mr. Burgess testified that Sid-Mar’s was unique in that it was not a leased restaurant on the water on pilings, but was situated on the ground. Other previous hurricanes, such as Andrew, had destroyed or partially destroyed those restaurants over the water, whereas Sid-Mar’s reopened within days of Hurricane Andrew. Also, Sid-Mar’s location outside of the ring protection levee on the lake gave it access to water views not available to the restaurants inside of the ring protection levee, such as R & O’s and Deanie’s, and that was a primary attraction |2nfor Sid-Mar’s customers, Mr. Burgess said, who often sat for hours enjoying their food and the view. The taking by the State completely and forever deprived Sid-Mar’s of its valuable and unique location. Mr. Burgess testified that he was unable to find any property on the lake similarly situated on which to reopen the restaurant.[10]
Mr. Stamm testified that he made a “judgment call” when he decided to use a multiplier of ten when calculating Sid-Mar’s economic damages. He -felt that with Sid-Mar’s long history at that unique location, and given that it was a family business with a loyal clientele and significant goodwill, this multiplier was fair and reasonable because the risk was “low” that, absent the taking, Sid-Mar’s would not have resumed operations and contin- *403 uedfin business for at least that length of time. Dr. Culbertson, the State’s expert, however, assigned no significance to the restaurant’s location in his own “judgment call” to • use a multiplier 'of three years’ worth of economic damages..
The State focuses on the fact that Mr. Burgess eventually received' approximately $600,000 in insurance proceeds after Katrina, and that he had only $50,000 or so left in 2009, and still had not reopened the business at that time. The trial court recognized, however, that the collateral source rule does not allow the State to benefit from insurance proceeds received by plaintiffs for- insurance purchased' by plaintiffs. Also, the insurance settlement was compensation for distinctly different damages (flood damage to the building and business interruption losses) than those owed by the State to plaintiffs (the value of the land taken and economic damages resulting therefrom). In any event, Mr. Burgess testified that he eventually received $250,000 in flood insurance proceeds for the building, but only after hiring a lawyer and not until approximately a year after the |¾1 storm. He also eventually received some business interruption coverage proceeds. Mr. Burgess explained that the insurance proceeds were used to pay his existing bills, unpaid obligations of the business incurred' before the storm, and some salaries, for employees,, because he was without his normal “economic engine,” the restaurant, that had previously provided for these expenses. He also testified that he used some of the proceeds to pay significant legal bills during this time to counsel in this suit, which, as noted by the trial court, lasted more than eight years from the taking to the compensation trial.
Dr. Culbertson’s failure to appropriately value the taken location that Mr. Burgess’s and Mr. Stamm’s uncontradicted testimony showed was vital to Sid-Mar’s success prior to the storm undermined his conclusion that a three-year multiplier was appropriate in this case. That factor, together with other factors relied upon as noted by Mr. Stamm, support the trial court’s use of Mr. Stamm’s- expert opinion that plaintiffs sustained the awarded economic losses caused by the State’s taking. The State’s repeated reference to the reopening and apparent continued viability of another destroyed Bucktown restaurant, Jae-ger’s, on Clearview Parkway, is irrelevant and without evidentiary value, as all testimonial references to Jaeger’s are only anecdotal and are unsupported by any evidence regarding that restaurant’s client base and financial situation prior to the storin or afterwards.
For the foregoing reasons, we find no abuse of the trial court’s discretion in accepting the multiplier used by Mr. Stamm rather than the multiplier used by Dr. Culbertson, and accordingly affirm the trial . court’s award of economic damages. See Phillip Family L.L.C. v. Bayou Fleet P’ship, supra.
I ^ASSIGNMENT OF ERROR NUMBER THREE

Legal interest on damages awarded

The State next argues that'the trial court erred in awarding interest on the damages judgment from the date of the taking, rather than from the date,of judicial demand. The State cites Weiss v. Board of Commissioners, 238 La. 419, 115 So.2d 804 (1959), in support of its.position. It attempts to distinguish the case relied upon by the .trial court, A.K. Roy, Inc. v. Board of Commissioners, 238 La. 926, 117 So.2d 60 (1960).
Upon review, we find no error in the trial court’s conclusion that interest is due from the date of the taking. A.K. Roy expressly found that compensation is due a *404 landowner from the time of the taking. This ease was decided two years after the Weiss decision and largely repudiated the high court’s prior holding on this issue. Further, we find no merit to the State’s assertion that A.K. Roy should be limited because it relied upon former La. C.C. art. 1938, which has since been' repealed. A careful reading of that opinion shows that the high court relied only in part on that article, and as plaintiffs note in their brief, the principle of Article 1938 survives in current La. C.C. art. 2000.[11]
Jurisprudence on the issue has followed the holding in A.K. Roy rather than Weiss (See, e.g., Roy v. Belt, supra, at 215; Simmons v. Bd. of Comm’rs of the Bossier Levee Dist., 624 So.2d 935, 959 (La.App. 2nd Cir.1993); Mathis v. DeRidder, supra; Reddel v. State, 340 So.2d 1010, 1017 (La.App. 4th Cir.1976)). Accordingly, we find that interest is due on the award for land value and the awards for economic damages from the date of tlie taking rather than from the date of judicial demand. This assignment of error is without merit.

J¡^PLAINTIFFS’ ANSWER TO THE APPEAL

Increase of Award of Attorneys’ Fees to Plaintiffs

In their Answer to the appeal, plaintiffs argue that the trial court erre'd in limiting their recovery for attorneys’ fees under La. R.S. 13:5111(A) to those fees only incurred in this state court litigation, and denying their request for attorneys’ fees they incurred in a 'related federal court condemnation litigation instituted by the United States in 2009.
In Louisiana, litigants may only recover attorneys’ fees when authorized by contract or statute. Rivet v. State DOTD, 96-0145 (La.9/5/96), 680 So.2d 1154, 1160. Pertinent to this case, La, R.S. 13:5111(A) allows a successful plaintiff in an inverse condemnation action to recover reasonable attorneys’ fees actually incurred. This section states:
A court of Louisiana rendering a judgment for the, plaintiff, in a proceeding brought against the state of Louisiana, .a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the talcing of property by the defendant, other than through aexpropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as, will, in the opinion of the court, compensate fof reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three-years from the date of such taking. (Emphasis added.)
Attorney’s fees statutes must be construed strictly because the award of attorneys' fees is exceptional and penal in nature. Bordelon v. Comeaux Furniture & Appliance, 97-405 (La.App. 5 Cir. 10/15/97), 701 So.2d 1032, 1037. Plaintiffs argue that an award of attorneys’ fees that includes fees for the federal suit is warranted in this’ instance because the federal *405 condemnation suit for which they seek attorneys’ fees arose out of this suit, concerned the same land, and was caused |a4by alleged maneuvering of the State, ostensibly in an effort to stymie or delay plaintiffs’ suit in state court. However, we find no error in the trial court’s strict construction of this statute, which precludes the attorneys’ fees award that plaintiffs seek, here. This statute does not allow an award of attorneys’ fees to these plaintiffs in a state court suit for fees incurred in a suit brought by the United States, as plaintiff, in another jurisdiction, here the federal courts, however “related” the two matters were.
Plaintiffs cite Olivier Plantation, L.L.C. v. Parish of St. Bernard, 14-2496 (La.2/27/15), 160 So.3d 173, 173, as authority for their position that La. R.S. 13:5111(A) allows a state trial court to award attorneys’ fees, in' a state court proceeding, for attorneys’ fees incurred in a related federal court proceeding. Olivier Plantation, L.L.C., like the instant suit, involved related state and federal -court proceedings concerning plaintiffs’ request for compensation for land commandeered by the governor following Hurricane Katrina under La. R.S. 29:721, et seq. We have closely studied the Louisiana Fourth Circuit’s discussion of the attorneys’ fees award made to plaintiff, Olivier Plantation in that case. At issue was whether the award was reasonable under La. R.S. 13:5111(A). One factor the court considered was that the litigation lasted almost five years in both state and federal courts. Olivier Plantation, L.L.C. v. Parish of St. Bernard, 13-0497 (La.App. 4 Cir. 10/30/14), 151 So.3d 965, 972. Considering the opinion as a whole, the court’s note of this factor in its analysis of reasonableness rather than entitlement under the statute is not sufficient for this Court to -conclude that the attorneys’ fees award made to Olivier Plantation in the state court suit did, in fact, include fees incurred in the related federal court litigation. Even if this Court were, to conclude that such an award was in fact made to Olivier Planta-, tion, such a determination, coming from another court of appeal, is not binding on this Court. 1⅞1⅛ any event, however, in this case,.we find that the trial judge’s strict interpretation of La. R.S. 13:5111(A) and resultant attorneys’ fees award was correct. Accordingly, plaintiffs’ request for attorneys’ fees. they incurred in, the related federal litigation is denied.

Motion for Additional Attorneys’ Pees Incurred on Appeal

Plaintiffs have filed a motion for an award of additional attorneys’ fees incurred on appeal. They argue that an award for these additional attorneys’ fees is in line with La. R.S. 13:5111(A)’s authority to make plaintiffs whole. They ask that this Court remand the matter to the trial court for a hearing regarding additional attorneys’ fees for defending this appeal. For the following reasons, this claim is without merit.
While plaintiffs successfully defended the trial court’s awards in some respects, they were also unsuccessful in other respects. This Court has rejected their request for attorneys’ fees for the federal condemnation proceeding. The State, likewise, prevailed in its argument to overturn the mental anguish damages award, thus also denying plaintiffs’ request that this award be increased. We find that under the facts of this -case, plaintiffs are not entitled to an award for additional attorneys’ fees, and thus decline to remand this matter for determination of such an award.

CONCLUSION

Accordingly, for the foregoing reasons, regarding the damages judgment, we affirm the award' of economic damages in *406 favor of plaintiffs; we affirm that interest shall run on this award and the award for the value of the land from the date of the taking; and we reverse the award of mental anguish damages to Mrs. Burgess and Mr. Burgess. Further, regarding the attorneys’ fees judgment, we affirm the award of attorneys’ fees to plaintiffs as awarded by the trial court and deny plaintiffs’ [ ^request for additional attorneys’ fees incurred in federal court proceedings. Finally, we deny an award of additional attorneys’ fees to plaintiffs for this appeal.

AFFIRMED IN PART, REVERSED IN PART

. Mrs. Burgess passed away in 2013; her succession representative has been substituted as a party-plaintiff. Mrs. Burgess and Mr. Burgess were the owners and operators of Sid-Mar's Restaurant & Lounge.

. The judgment awarded Sid-Mar's— $248,870.00 in lost business profits; Mr. Burgess-$450,51-3.00 in lost wages; and Mrs. Burgess — $108,866.00 in lost wages. .

. This issue was the subject of a pre-trial motion for partial summary judgment filed by the State. Plaintiffs opposed the motion and additionally filed a motion to have R.S. 49:214.6.5 declared "unconstitutional” as applied to plaintiffs’ claims which arose prior to the statute’s enactment. The trial court denied the State’s motion for partial summary judgment on the merits, holding that R.S. 49:214.6.5 applied prospectively only, and furthermore was substantive, rather than remedial or interpretive, legislation. Plaintiffs' motion was found to be moot. The State applied to this Court for supervisory review. This Court declined to exercise its supervisory jurisdiction, finding that relator had an adequate remedy on appeal (Sid-Mar’s, et al. v. State, 14-836 (La.App. 5 Cir. 11/5/14), unpublished writ decision).

. Section 11 of the Act states: "This Act shall , become .effective upon signature by the gover- , nor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana-. If vetoed by the governor and subsequently approved by the legislature, this Act shall become effective on the day following such approval.”

. This statute has since-been repealed and reenacted as 'R.S. 49:214.5.6, which is discussed infra.

. Testimony by Mr. Burgess was clear that given the long history of Sid-Mar’s, both in the community and personally to' his family, had the property not been taken by the State, he would have "absolutely” rebuilt the restaurant. He testified that he had already taken steps to begin rebuilding by the time the commandeering order was issued.

. In La Bruzzo v. State, 14-262 (La.App. 5 Cir. 11/25/14), 165 So.3d 166, 172, the Court held that under La. R.S. 29:730, a commandeering is, in fact, a particular kind of statutory taking.

. Roy v. Belt, 03-1022 (La.App. 3 Cir. 2/18/2004), 868 So.2d 209, citing Williams without discussion of cases cited therein or the legal issue of unlawful taking, recognized a cause of action for mental anguish damages in an inverse condemnation case without a finding of trespass or bad faith attributable to the governmental authority. In that case, three buildings constructed by the sheriff over á course of years were found to encroach on the plaintiffs’ property, which shared a common boundary with the sheriffs property. The surveys used by the parties to establish the properties’ boundaiy were conflicting, as was the expert testimony. There’'was no determination that the sheriff's actions were tortious or in bad faith. We- find that this result conflicts with the holding of Williams, rather than follpws it. Further, because this case comes from another circuit, we are not bound by it. (It is noted that while the cause of *400 action was allowed, the court found no evidence of mental anguish and thus declined to award such damages.)

. As noted below, however, protracted litigation may be considered when awarding economic damages.

. Both experts agreed that the opening of the new Sid-Mar’s in its different location was an attempt to mitigate the loss occasioned by the taking.

. La. C.C. art. 2000 states, in pertinent part:
"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924.”